[ Filed December 10, 1889. ]

# J. M. McQUAID, Appellant, v. THE PORTLAND & VANCOUVER RAILWAY CO., Respondents.

In a conveyance of land bounded by a public road or street, the grantee ordinarily takes a legal title to the center thereof, subject to the rights of the public therein ; but he does not thereby secure such a title to the land embraced in the road or street as will enable him to claim compensation from a railway corporation which locates and operates its road thereon, under an appropriation of the same authorized by sections 3242, 3243, title 2, chapter 32, Annotated Laws of Oregon, or by any similar statute. .

Whether an owner of land which abuts upon a public road or street can maintain an action for damages against a railway corporation for locating, constructing, and operating its road thereon, under an appropriation thereof authorized by such statute, does not depend upon his ownership of the fee to the land included in the public road or street, but upon the fact as to whether the location and operation of the railway destroys or materially interferes with his access to his premises.

An owner of real property has a right to the use of the public road or street upon which it abuts, for the purposes of ingress and egress to and from the same.

This right is appurtenant to his premises, and constitutes such a property interest that it cannot be taken away or seriously impaired, against his will, for any purpose, without payment of just compensation therefor.

Where a railway corporation locates and constructs its road upon a public highway under an appropriation thereof authorized by the statute referred to, its occupation of the highway is a kind of sufferance.

It is permitted to appropriate so much of the highway as may be necessary or convenient for such purpose, but the use thereof by the public is not thereby restricted. The railway corporation is allowed to build and operate its road upon the highway, but it has no authority to change the grade thereof, or use it to the exclusion of the public, or in such manner as will infringe upon the rights of adjoining property owners to its use.

The latter are compelled to submit to ordinary inconveniences and annoyances which the operation of a railway located upon a public road occasions; but they cannot be deprived of the right of ingress and egress to and from their premises without their consent.

Where a railway corporation locates its road, under the provisions of such a statute, in such close proximity to the premises of an adjoining lot owner that its use obstructs his communication with the street, and interferes with its enjoyment by those who occupy the premises to such an extent as to materially depreciate their value, the lot owner is entitled to recover the amount of such depreciation.

In an action against a railway corporation to recover damages in consequence of its locating and constructing its road upon certain streets in a certain city, it was alleged in the complaint that the plaintiff was the owner of premises at the corner of two of the streets; that the defendant had located its road above the grade thereof, and made a large curve in its road; had built it so near the plaintiff's premises that a wagon could not pass between the curb of the sidewalk and its road; that it had so taken and appropriated such part of the streets at the corners of plaintiff's premises as to interrupt and greatly obstruct access thereto ; and, it appearing that evidence was introduced upon the part of the plaintiff at the trial of the said action, tending to prove the truth of said allegations,

Held, that it was the duty of the trial court to have submitted to the jury the question as to whether the location and operation of the defendant's road interfered with the plaintiff's ingress and egress to and from his premises, so as to depreciate the value thereof.

*Held, further,* that the plaintiff was entitled to recover damages for the amount of any depreciation in the value of his premises caused by the defendant in locating, conducting, and operating its railroad so near them as to prevent or materially affect access thereto by the plaintiff, or those occupying said premises, if found that they had suffered depreciation from such cause.

Appeal from the circuit court for Multnomah county.

The appellant commenced an action against the respondent, a private corporation formed under the laws of the State, to recover damages caused by its constructing and operating a railway in certain streets in the city of East Portland.    He alleged in his complaint that he was owner in fee of lots 7 and 8, block 67, situated at the southwest corner of Third and E streets, in said city, including 100 feet square, fronting and abutting upon said streets; and that his ownership thereof extended to the center of the part of said streets upon which his said lots so fronted and abutted, subject to the public easement therein.    That the respondent constructed a railroad in said city extending from the intersection of N and Water streets north along Water street to J street; thence east up J street to Third street; thence north along Third street to said E street; thence east along said latter street to Fourth street; and thence north along Fourth street to its northern termination.    That in constructing said railroad the respondent unlawfully, and without the license or consent of appellant, and against his protest, and without making compensation to him for taking said streets, took and occupied the portion of said Third street owned by appellant as aforesaid, and constructed its railroad thereon a distance of 100 feet in front of appellant.    That, in constructing said railroad in said portion of Third street, the respondent negligently and wilfully built the railroad above the grade of the street the whole distance of the 100 feet, and made a large curve in its road at that point, building its road so near the curb of said lots that a wagon cannot pass between it and the railroad.    That respondent wrongfully and unlawfully constructed the railroad on E street, between Third and Fourth, in the form of a reverse curve, or letter S.    That the portion of Third and E streets upon which the said

lots fronted had been improved by appellant at a cost
of $165.   That respondent had, since September 20, 1888,
been operating the said railroad, carrying freight and
passengers thereon, and has since said date, and is now,
using in operating the road an old and defective locomo-
tive, also a cheap and badly constructed locomotive engine,
which is housed in, and a falsely called "steam motor,"
which is propelled along said streets over its said road.
That said locomotives, in propelling the cars on the rail-
road, emit large quantities of steam, smoke, and cinders,
make loud noises, which annoy the appellant and dis-
turb him, so as to injure his peaceful and quiet possession
of said property; and respondent has taken and appropri-
ated said part of said streets, thereby interrupting and
obstructing his access to his said lots, and has almost
driven travel off said streets.   That, in consequence
thereof, the respondent has rendered the appellant's said
lots of less value, and damaged him in the full sum of
$3,000.   The respondent, for answer to the said complaint,
denied the alleged negligence in the construction of its
road, or that it was above grade, or had a reverse curve, or
that it retarded access to the appellant's lots, or that
it used the alleged character of engines; denied the alleged
ownership of appellant in the fee of the street; alleged
that the road was constructed in pursuance of authority
granted by the common council of the city of East Port-
land; denied that it was intended or suitable for, or oper-
ated for, the conduct of a general freight business, but
alleged that it was only operated for the local passenger
business along the streets of East Portland and contiguous
towns, and for such business as is usually carried on by
cable or horse-car lines of street railways.   The respondent
further alleged that the town of East Portland was platted
in 1865, and the streets thereof dedicated to public use, by
James B. Stephens, who was then the owner of the land,
and that at the time of such dedication the general laws
of Oregon made such streets subject to use for the con-
struction and operation of railroads; and it denied that

appellant had been damaged.   A reply was filed, denying all the allegations of new matter alleged in the answer. The case was tried in the circuit court by jury, who returned a verdict in favor of the defendant, upon which verdict the judgment appealed from was entered.   The appellant assigned a number of grounds of error, relied upon on the appeal, which are noticed in the points of the respective counsel, and referred to in the opinion of the court herein.

*E. O. Dowd* and *R. Williams*, for Appellant.

By the common law rule, a grantee of a lot or block of land in a townsite took the fee to the center of the abutting streets.   3d Kent's Comm., 12 Ed. 432 and cases cited; 2 Dill. on Munic. Cor. 631 and note, p 632; in the matter of John and Henry streets 19 Wend. 657; 20 *id.* 96; *Carpenter* v. *O. S. R. R. Co.*, 24 N. Y. 692; *Ford* v. *Ch. & N. W R. R. Co.*, 14 Wis. 663; *Wayl* v. *Sonora Ry.*, 69 Cal. 203; *Bissell* v. *N. Y. Ry. Co.*, 23 N. Y. 61; *Hammond* v. *McLachlan*, 1 Sandf. 323; *Stiles* v. *Coots*, 4 Day 322; *Wagner* v. *Troy R. R. Co.*, 25 N. Y. 526; 50 Pa. St. 499; 28 Conn. 168, § 4184, Code of General Laws, 24 N. Y. 658.   The building and operating of such a railway upon the streets upon which appellant's lots fronted and abutted was a further servitude upon such streets, and was a "taking," within the meaning of the constitution, of a property right without compensation, and the legislature, much less the common council of the city of East Portland, could not authorize the railroad in question to be constructed thereon against the appellant's will without compensating him for such damages as he thereby suffered.   Kent's Com. 339; Dill. on Munic. Cor., §§ 703, 704, and 725; Cooley's Const. Lim., §§ 549, 550, and 551, pp, 681 and 682, 5th Ed.; 1 Reed Ry. Laws 2292; Woods Ry. Laws, § 324, pp. 734 and 739; *Imlaw* v. *Union Branch R. R. Co.*, 20 Conn. 249; *Fleischner* v. *R. R. Co.*, 25 Wend. 526; *Ford* v. *R. R. Co.*, *supra*; *Pomeroy* v. *R. R. Co.*, 16 Wis. 670; *Henkman* v. *R. R. Co.*, 46 Iowa, 316; *Wayl Sonora Ry. Co.*, 69 Cal., *supra*; *R. R. Co.* v. *Reed*,

41 Cal. 256; *Starr* v. *Railroad Co.*, 24 N. J. Law, 593; *Williams* v. *Railroad Co.*, 16 N. Y. 97; *Nicholson* v. *R. R. Co.*, 22 Conn. 85; *Trustees* v. *Railroad Co.*, 3 Hill, 567; *N. Y. R. R. Co.* v. *H. R. Ry. Co.*, 15 Hun. 66; *Henderson* v. *N. Y. C. Railroad Co.*, 78 N. Y. 423; *Rainsden* v. *Manchester Junction Ry. Co.*, 35 Eng. Ry. Can. cases, 952. We contend further that if the fee to the land in the streets were not in the appellant, but in the public, that the taking of the streets for the purposes of the railways was the taking of a property right of the appellant, within the meaning of the constitution. *Oregonian Ry. Co.* v. *Hall*, 9 Or. 379; *Crawford* v. *Village of Delaware*, 7 Ohio, 469; *Street Ry. Co.* v. *Cumminsville*, 14 Ohio, 524; *City of Denver* v. *Bayer*, 1 West Coast Rep. 505; *Story* v. *N. Y. Elevated Ry. Co.*, 90 N. Y. 122; *Schr.* v. *Met. El. Ry. Co.*, 164 N. Y. 268; 10 N. E. Rep. 528; *Columbus Ry. Co.* v. *Gorden*, 13 N. E. Rep. 65; *Millenden* v. *U. P. Ry. Co.*, 14 Fed. Rep. 394; *Gottschalk* v. *C. B. & Q. Railroad Co.*, 16 N. W. Rep. 475; *Burlington M. Ry. Co.* v. *Reinhackle*, 13 N. W. Rep. 69; *McLean* v. *O. I. & D. Ry. Co.*, 25 N. Y. 782; *Bracken* v. *M. & St. P. Ry. Co.*, 11 N. W. Rep. 124; *Stanley* v. *City of Davenport*, 6 N. W. Rep. 706; *Grand R. and Ind. Ry. Co.* v. *Hassell*, 38 Mich. 62; *St. P. & P. Ry. Co.* v. *Scummer*, 74 U. S. St.; *St. Ry.* v. *Cumminsville, supra; Carolina Ry. Co.* v. *Sterner*, 44 Ga. 546; *Jones* v. *Keith*, 37 Tex. 397; *Yates* v. *O. & M. Ry. Co.*, 7 Post. 479; *Haynes* v. *Thomas, id.* 38; *Protzman* v. *I. & C. Ry. Co.*, 9 Ind. 467; *Evansville* v. *C. Ry. Co., id.* 433; *Denver C. Ry. Co.* v. *Nester*, 15 Pac. Rep. 715; 2 Dill. Munic. Cor., 723, note 1, p. 724; Cooley Const. Lim., p. 675, and cases cited; *Adams* v. *Ch. B. & N. Ry. Co.*, 1 Saw. R. 493; *Cox* v. *Lamsville Ry. Co.*, 48 Ind. 178; *Carl* v. *Sheboygan & G. D. Ry. Co.*, 1 N. W. Rep. 295; *Grand Rapids & Ind. Ry. Co.* v. *Hassel*, 11 West Coast Rep. 214. The appellant was not only entitled to recover for the taking of a property right, but also to recover damages caused by the building and operating of the railroad. The true measure of damages in such cases is the depreciation in value of the premises for any use to which they may be

put.   *Ch. & E. J. Ry. Co.* v. *Loeb*, 118 Ill. 203; Mills E. D. § 266;   *Ch. & I. Ry.* v. *Baker*, 73 Ill. 316;   *Ch. P. Ry.* v. *Stern*, 75 Ill. 41;   *Drucker* v. *Manhattan Ry. Co.*, 106 N. Y. 167;   12 N. E. Rep. 570;   *S. & E. Ry. Co.* v. *Doughty*, 22 N. Y. 495; *City of Denver* v. *Bayer, supra*, 10 N. E. Rep. 534;   *Henderson* v. *N. Y. Ry. Co.*, 78 N. Y. 423;   *McLean* v. *Chicago & I. & D. Ry. Co.*, 25 N. W. Rep. 782;   *Wilmington and Reading Ry. Co.* v. *Stauffer*, 60 Pa. 374;   *Central Branch U. Ry. Co.* v. *Irvine*, 23 Ken. 415;   *Colville* v. *St. Paul & C. Ry. Co.*, 19 Minn. 283;   *G. R. & I. Ry. Co.*, v. *Hassel*, 47 Mich. 392; Cooley's Const. Lim. 700, 702;   *Huchman Hanks* v. *C. C. & D. Ry. Co.*, 46 Iowa, 376;   *G. R. & I. Ry. Co.* v. *Hirsel*, 11 N. W. Rep. 215;   *Bracken* v. *St. & L. Ry. Co.*, 11 N. W. Rep. 126.

*C. B. Bellinger*, for Respondent.

The law in force since 1862 authorizes the county court, in the case of roads, and the municipal authorities, in case of streets in incorporated towns, to agree with corporations for the use of roads and streets by railways.   2 Hill's Compilation, 1438, 1439.   This statute was in force at the time Stephens dedicated these streets, and it made this use one common to all highways.   A dedicator must be presumed to have contemplated the use to which the law at the time of the dedication declared the streets should be subject.   *Barney* v. *Keokuk*, 94 U. S. 340.   This statute is a legislative declaration that a street might be appropriated, might be taken for a railway, at the time the street was dedicated, in accordance with its provisions.   The dedicator must at the time have contemplated that the street might be appropriated, "taken," for such use; and he must have made the dedication subject to such an appropriation and taking.   In any other view there could be no appropriation or taking of the street.   The law declaring the use to which streets might be put, in force at the time the dedication was made, is a part of the dedication; and it is, in this case, precisely as though Stephens in his dedication had declared in words, "I grant this land to the public, subject to use for all the purposes of a highway, and subject to be

taken and appropriated for a railroad whenever such use becomes necessary and the public authority authorizes it." This construction of the said statute has been acquiesced in and acted upon continuously and uniformly for the last twenty years, during which time railways of all kinds have been built and operated in streets and roads under the agreements provided for therein, without compensation to abutting owners. The long acquiescence of the legislature in the interpretation put upon its enactments by notorious practice may, perhaps, be regarded as some sanction and approval of it. End. Interp. St. § 357. Where a particular construction has been generally accepted as correct, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention. Cooley, Const. Law, 97. When rights have accrued, in reliance upon such construction, which would be divested by a decision that the construction was erroneous, the agreement *ab inconveniente* is sometimes allowed to have very great weight. Id. In many cases it is held, in the absence of a statute like ours, that, without reference to the fee, the highway is subject for use for the purposes of a railway. *Bulton* v. *Short Route Ry. Co.*, 4 N. W. Rep. 332; *Attorney General* v. *Metropolitan Ry. Co.*, 125 Mass. 515; *Morris & Essex Ry. Co.* v. *City of Newark*, N. J. Eq. 352; *C., B. & Q. R. R.* v. *McGinnis*, 79 Ill. 279; *National Bank* v. *N. Y. Elevated Road*, 24 Fed. Rep. 114. There can be no recovery for railways in a street without reference to the fee. *Parry* v. *Railroad* 55 Ala. 413; *Struthers* v. *Railroad*, 87 Penn. St. 282; *Swensen* v. *City*, 89 Mo. 157; *McLachlan* v. *Railroad*, 5 Rich. (South Carolina) 583; *Koelmel* v. *Railroad*, 27 Louisiana An. 442; *Railroad* v. *Brown*, 17 B. Mon. 763; *New Albany, etc., Railroad Co.* v. *O'Daily*, 13 Ind. 553; *New Albany, etc., Railroad Co.* v. *O'Daily*, 12 Ind. 551. The fee in this case is not in the adjacent owner. His deed conveys to him two lots, according to Stephens' plat, which shows them to be 50x100 feet each, and to extend to the west line of Third street and the south line of E street. It therefore conveys no title in the street. *Railroad* v. *Heisel*, 38 Mich. 62, and cases cited. The fee of

the streets in the public and their use for railway is not a
new use. *Killinger* v. *Railroad*, 50 N. Y. 208; *Railroad* v.
*Heisel, id.*; *City* v. *Railroad Co.*, 24 Iowa, 455; *Railroad* v. *Gar-
side*, 10 Kan. 552; *Hogan* v. *Railroad*, 71 Cal. 83 (11 Pacific
Rep. 876). Public highways are the property of the state,
and as such are subject to its absolute authority. Whether
the state owns the soil of the way, or only the right of way,
it is the owner of the franchise, and the ownership of the
soil beneath the same is subject to such franchise, and to
all the uses thereof that may be permitted by the statute.
1 Rorer on Railroads, 497, 515, and note. The statute pro-
viding that upon the vacation of a street the fee therein
shall vest in the adjacent owners, so far from supporting
the doctrine that the fee is already in such owners, has the
opposite effect. The provision for vesting the fee in the
abutting owners in case the street is vacated is inconsist-
ent with the notion that the fee is already in them. The
authorities which held that the location of a railway upon
a street is an additional burden have reference to railroads
for commerce, and not to street railways. *Grand Rapids,
etc., Ry. Co.* v. *Heisel, supra; Newell* v. *Ry. Co.*, 35 Minn. 112.
If the appellant were the owner of the fee in the streets
and had a right to recover, he could only recover the value
of the fee and such special damages as are peculiar to him-
self. *Hogan* v. *Railroad, supra; C., B. & Q. Railroad* v.
*McGinnis*, 79 Ill. 267; 1 Ror. 516. If the railroad is built by
public authority, and the track is brought nearer to the
complainant than is agreeable, it is *damnum absque injuria.*
*Snyder* v. *Railroad*, 5 Penn. St. 343; 1 Rorer, 522, 526; *Nat.
Bank* v. *Railway*, 24 Fed. Rep. 118; *Walker* v. *Colony, etc.,
Ry. Co.*, 103 Mass. 14; *Struthers* v. *Railway, supra.*

THAYER, C. J.—The principal question to be determined
in this case is whether the appellant was entitled to recover
damages from the respondent in consequence of its build-
ing and operating the street railway complained of, under
the circumstances and in the manner in which it was con-
structed and used. There seems to be two views upon the
subject, either of which is sustained by numerous pre-

cedents and authorities, although they differ widely.   One of these views is that a lot owner in a town or city has a private property interest in the street in front of his lot, and that the appropriation of the street, under such circumstances as claimed in this case, deprives him of his property, and entitles him, under the constitution of the State, to compensation therefor.   The other view is that the street belongs to the public; that the latter owns it for all the purposes of a thoroughfare, and can use it for such purpose in any manner best calculated to subserve public needs and requirements; and that the lot owner has no right or interest in any part of the street, except in common with the other members of the community.   Either of these theories can be maintained by a long list of decisions of courts of the highest standing, and by very cogent reasons; but each of them, when strictly carried out, results in hardships and frequent injustice.   The maintenance of the theory that the lot owner has a private property in the street, which must be condemned and paid for before the railway can be built, would practically prevent the establishment of such a means of transportation, and be liable to operate injuriously to the public.   Upon the other hand, if it should be held that the lot owner has no private interest in the street, and a railroad track can be laid, and a steam engine and cars be used thereon, so as to materially interfere with the right of the lot owner to egress and ingress, it would be an injustice.

The two principal tests which have been applied in order to determine a liability or non-liability in such cases are: First, as to whom the fee in the street belongs, and second, whether the appropriation of it by a private railway company, in order to transport passengers, is a new use or servitude, or is consistent with the general purposes for which the street was established.   Too much importance, it seems to me, has been attached to the question of ownership of the fee in the street.   When a street has been dedicated to the public, or land been taken for a street under the law of eminent domain, the inquiry as to.

whom the fee is in is not very material.    Its being in the
public is a pure fiction.   The public may have an irrevo-
cable right to the use of the street; but how can it acquire
the fee to the land?    The fee must vest in some one having
a legal capacity to take it.    It must be a natural or arti-
ficial person,—must be some one having a legal entity.
The declaration that the fee in such case is in the public,
meaning the general mass of the people, without regard to
any legal organization, although often made use of, is to
my mind absolutely absurd.    The public, as a mass, does
not, in my opinion, possess any such capacity.    Nor is it
important, in such a case, that the fee to the land is in the
owner of the lot, unless he can maintain that the use of it
by the railway company is a new use,—an additional bur-
den upon the land from that contemplated by the dedica-
tion.    The fee to the land constituting the street is
generally conveyed to the adjacent lot owners in the
conveyance to them of the lots.    *Hammond* v. *McLachlan*, 1
Sandf. S. C. R. 323, is a leading case upon that subject, and, so
far as I have been able to discover, has been followed by the
later adjudications of the New York courts.    *Perrin* v.
*Railroad Co.*, 36 N. Y. 320; *Sherman* v. *McKean*, 38 N. Y.
366.    The question as to whether a deed to a lot conveys
to the center of the street depends, of course, upon its
construction.    It may limit the conveyance to the exterior
line or edge of it, though, ordinarily, it extends *ad medium
filum viæ*.    It must, it seems to me, be held that the fee is
either in the adjacent lot owners or remains in the dedica-
tor.    I do not think that it can be maintained that it
passes to the public, either by contract or by any existing
statutory authority.    When a land proprietor lays out
a town upon his land, he first surveys it into blocks, lots,
streets, etc., and then makes and files a plat thereof.
Thus far he has created no obligation; but whenever he
sells one of the lots by reference to such plat he impliedly
covenants that the street upon which it abuts shall forever
remain open for the lot owner's accommodation.    But the
public then acquire no interest in the streets in the town,

and will not until they accept the dedication.    The lot owner's interest attaches long before the rights of the public arise.    The former secures his right by a deed, and because the public thereafter accept the dedication, it does not follow that the lot owner is thereby deprived of those rights.    The statute might, no doubt, provide that when a plat shall be so made and filed for record the legal title to the streets shall vest in some one who has legal capacity to take and to hold the same in trust for the purposes of the dedication; and, if the general public has such a capacity, it could have provided that such title should vest in the public.    The statute, however, has made no such provision.    It has provided (section 4180, Ann. Laws) that "every donation or grant to the public, including streets and alleys, or to any individual or individuals, etc., marked or noted as such on the plat of the town wherein such donation or grant may have been made, shall be considered, to all intents and purposes, as a general warranty to the said donee or donees, grantee or grantees, for his, her, or their use, for the purposes intended by the donor or donors, grantor or grantors, as aforesaid."    This section of the statute creates a covenant that the donee or grantee shall enjoy the use of the property for the purposes intended by the donor or grantor.    It does not, however, attempt to vest the legal title in the former, nor, as I can discover, add any force or strength to a dedication which it did not possess at common law.    The warranty does not become operative or binding until there has been an acceptance of the use.    It then renders the dedication irrevocable, which would as effectually be the case if there were no warranty.

But in whomsoever the fee to the land constituting the street may be is not, to my notion, very important, in a case like the one under consideration.    The use of the land as a street includes, practically, its entire beneficial interest. There is no estate of a private character left in the dedicator, if the fee does remain in him, which he can utilize, and, if it vests in the lot owner by virtue of his deed to the

lot, it confers no rights which are not secured to him by the implied covenant, arising out of the conveyance, that he shall have a right of way over the street, and egress and ingress to and from his premises by means thereof. The lot owner's rights in the street are just as sacred, so far as I can see, in the one case as in the other.

The more important question for consideration is how far a street can be appropriated by a railway company regardless of the rights of a lot owner; and its solution, to my mind, involves the main difficulty in this class of cases. Our statute (title 2, chap. 32, Ann. Laws) has undertaken to provide the means in which a public road, street, or alley, or public grounds, may be appropriated.    Section 3242 thereof authorizes a corporation organized for the construction of any railway, etc., whenever it shall be necessary or convenient, in the location of its road, to appropriate any such public road, etc., to appropriate so much thereof as may be necessary or convenient in the location and construction of its road; and it authorizes the county court of the county wherein such public road, etc., may be, unless within the corporate limits of a municipal corporation, to agree with the corporation constructing the road upon the extent, terms, and conditions upon which the same may be appropriated, or used and occupied, by such corporation.    And section 3243 thereof provides, in effect, that if the public highway or grounds be within the limits of any town, whether incorporated or not, that such corporation shall locate its road upon such particular road, street, or alley; or public grounds, within such town, as the local authorities mentioned in the last section (referring to section 3242) and having charge thereof, shall designate.    The two sections, however, respectively provide,—the former one, that, if such county court and corporation shall be unable to agree upon the extent, terms, and conditions upon which the public road, etc., may be appropriated, etc., such corporation may appropriate so much thereof as may be necessary and convenient in the location and construction of its road; and the latter one,

that if such local authorities shall fail or refuse to designate the particular road, etc., upon which such corporation shall locate its road, within a reasonable time, when requested, the corporation may make such appropriation without reference thereto. These provisions of the statute are ambiguous, unsatisfactory, and absurd; and about all that can be gathered from them is that they authorize the appropriation by a railway corporation of so much of a public road or street as may be necessary and convenient in the location and construction of its road. The appropriation, however, is only of a part of the easement or use secured to the public in the land embraced within the public road or street. The legislative jurisdiction in such matters is limited to a control of the use which belongs to the public, and it should not be presumed that the legislature intended to exercise it in violation of private rights and interests. It authorizes the appropriation of the part of the public road or street as such, and amounts to no more than a partial change of the manner of its use. It does not attempt to interfere with the private rights of the owners of the land abutting upon the road or street; and I doubt very much whether the legislature has the legal right, by such an act, to destroy or seriously impair rights of that character. They are virtually private property, and cannot be taken by a railway corporation without compensation being first made or secured in such manner as may be prescribed by law. Article 11, § 4, Const. Or. I do not regard the occupation of a public highway by a railway corporation, under the appropriation authorized by the statute in question, as anything more than a kind of sufferance. The railway corporation is permitted by the statute to appropriate so much of the highway as may be necessary or convenient in the location and construction of its road; but the use thereof by the public is not abridged. It is simply extended to the railway corporation, and the latter admitted to its enjoyment in common with the former.

The corporation is allowed, under the statute, to build

and operate its railway within the bounds of the highway; but it has no authority to change the grade thereof, or to use it to the exclusion of the public.   Nor has it any right to use the highway in such a manner as will cut off access to it by the adjoining lot owner.   The latter will, doubtless, be obliged to submit to the ordinary inconveniences and consequences which the construction of a railroad track, and the moving of a locomotive and cars thereon, occasion, —be compelled to endure the smoke, noise, and screeching which naturally result from the use of that character of vehicles; but they cannot be deprived of the right of ingress and egress to and from their premises without compensation.   This class of cases is unlike, in principle, the class in which adjacent lot owners are denied the right to recover damages for a loss or inconvenience resulting from an improvement of streets by the public authorities having charge of such matters.   In the latter case, the authorities have an undoubted right to alter or establish the grade of streets in towns or cities, and to cause the improvement of the streets to be made according to the standard of such grade, without creating any liability in consequence thereof. But the improvement is made in order to render the street useful and convenient to the public; and, if the work is done properly, the lot owners, although they may suffer incidental damages thereby, have no legal grounds for complaint.

The use of a street by a railway corporation, under such an authority as herein referred to, is, however, primarily for its own advantage.   Its occupation of the street is the same as of any other beneficiary of its use, and is subordinate to the authority of those in whom the law vests the management and control of the street.   Its right to so locate and construct its road is restricted to such a use of the street as will not destroy or materially impair the rights of others to its use and enjoyment.

It is contended that a public road or street is not established for the purpose of being used by a railway corporation, but is designed for the mode of travel ordinarily

pursued along such thoroughfares, and that its use by the former imposes a new burden upon the land embraced within it.   The statute to which reference has been made is of long standing, and contains the only provision which authorizes a railway corporation to appropriate, *eo nomine*, a part of the public highway for the location and construction of its road.   The authority of the statute has been invoked and applied in every instance in which a railroad has been located and constructed across or along a highway in this State, and has never been questioned.   To determine, therefore, at this late date, that it is practically a nullity, as we necessarily would be compelled to do if we indorsed the position of the learned counsel for the appellant, would operate injuriously to the community.   I am aware that the construction of the said statute indicated herein does not accord with that given to similar statutes by courts of acknowledged ability of other States.   In *Williams* v. *Railroad Co.*, 16 N. Y 97, a leading case upon the subject, it was held that the owner of a fee in a public highway might maintain an action against a railroad company which, without his consent or the appraisal of his damages, had entered upon and occupied such highway with the track of its road, holding that the appropriation of the highway by the company was a "taking" of the property of the owner of the fee, within the meaning of the constitutional provision upon that subject, and that the conversion of a highway into a railroad track was a material change from the use for which it was originally intended.   The opinion of the court in that case was delivered by a jurist who has had few equals in learning and ability, and for whose wisdom I entertain the highest regard.   The opinion was supported by authority of great weight, and sustained by clear and cogent reasoning; but, notwithstanding, I am satisfied that time and experience have shown that the rule there laid down was not the best suited to the needs and requirements of the community.   I think, with all due deference to the name of Judge Samuel L. Selden, that it would have been better to have held that the location and construction of a railway

track by a railway corporation in a public highway, under a special permission granted by the legislature, was not necessarily a violation of the rights of the owner of the fee to the land, or that it put the land to a use foreign to that contemplated in the establishment of the highway; that such use was not so inconsistent with the principal use as to constitute a taking of the land, within the meaning of the constitutional provision referred to, unless it cut off or seriously impaired rights belonging to parties by virtue of their relations to the land as such highway. Such a holding would have been more conservative, it seems to me, although made at the sacrifice of refined logic. The legal title to the land in a public road or street is more in name than in substance. It exists mainly in theory, and cannot be rendered available to the owner, except in case the road or street is discontinued as such, which is a remote contingency. The use of a public highway by a railway corporation under the appropriation authorized by said statute is, in my opinion, a legitimate use of it, when it does not infringe upon the adjoining land owner's right of access to the highway; but when it materially interferes with such right the land owner can maintain an action against the corporation for damages for the depreciation caused thereby to his land.

The counsel for the respondent claims that the railway track in question was located upon the streets in the city of East Portland designated by the city council thereof, and that it was rendered necessary thereby, in its construction, to make curves in the track in order to pass around corners, which brought the track nearer to the premises of the appellant than it would otherwise have been located. This was the respondent's misfortune, and could not be pleaded as a justification for intruding upon the appellant's right to the use of the street in front of his premises. The city council had no power to make any directions in that respect, except what is vested in it by the said statute, which, as before suggested, was not intended by the legislature to authorize a direct interference with the rights of lot owners

above referred to; nor had the legislature itself any such power without providing for the payment of compensation. If the respondent could not locate and construct its road upon the streets designated by the common council of the city without affecting the rights of some of the adjoining lot owners it should not have attempted the appropriation without the consent of such lot owner. It was not compelled to use the streets of the city for its railway track, nor was it justified in so doing without due authority.

There are many items of damages alleged in the complaint which cannot be recovered in the action, but if the location of the railway is in such close proximity to the appellant's premises that its use obstructs communication with the street and interferes with the enjoyment of it by those who may occupy the premises to such an extent as to materially depreciate their value, the appellant should be entitled to recover the amount of such depreciation. The circuit court should have referred that question to the jury with instructions that if they found the facts as above suggested, they should find for the appellant and assess his damages in accordance with the rule there indicated. The complaint in the action was not strictly framed according to the theory of the case as herein laid down, but it is broad enough, in its allegations of facts, to meet that view. I do not think that the action was based wholly upon the claim that the placing of the railroad upon the street, of itself, gave a right to damages for the appropriation of property. The complaint contains the allegation "that in constructing the said road on said portion of Third street abutting said lots, the respondent negligently and wilfully built it above the grade of said street for the whole 100 feet, and made a large curve in its road on that portion of Third street, and built its road so near the curb of appellant's lots that a wagon cannot pass between the curb and the railroad." This allegation is followed by the allegation "that the respondent, through and by building its said road on said street as aforesaid, has so taken and appropriated said part of Third street so

owned as aforesaid by appellant, and also said portion of E street, between Third and Fourth, as to interrupt and greatly obstruct access to appellant's said lots, in so much as to have almost driven travel off of said streets, etc." These allegations present the identical question considered, and the circuit court committed error in its holding that the action was based upon the claim that the placing of the railroad upon a street gives a right to damages for the appropriation of property. That there could be no recovery on the part of the appellant for that simple cause of action, for the fact of placing a railroad upon a public street; that he could not recover in the action for the extraordinary use of the street; that if there was any extraordinary use of it, or any extraordinary results from the operation of the road, and the city of East Portland authorized the road to be put down upon the streets and operated, the appellant could not recover. This, in substance, was one of the instructions given by the court to the jury to which exceptions were taken; and it is very evident, from an examination of the complaint, that the court put too narrow a construction upon it. The instruction was also faulty in another respect. The court left it to the jury to find whether the city of East Portland authorized the respondent to locate and operate its road on and along said streets. The evidence as to what the city did to authorize the respondent to so locate and operate its road was in writing; was in the form of an authenticated copy of a city ordinance; and it belonged to the court, and not to the jury, to determine its effect. Besides, the instruction assumed that the city of East Portland had power to authorize the respondent to locate and operate its road at the place and in the manner in which it was done. The charter of said city, I find, does empower the common council thereof to "permit, allow, and regulate the laying down of tracks for street cars and other railroads upon such streets as the council may designate;" and that may have empowered it to authorize the respondent to locate and operate its road at the place where it was

constructed. But whether it did so or not depends upon whether it trenches upon the rights of the appellant in the respect hereinbefore mentioned. This presented a question of fact which the court should have submitted to the jury. The respondent could only have obtained from the common council of the city authority to locate and construct its road upon the streets in such a manner as not necessarily to interfere with the rights of others to their use. A railway corporation authorized to use a public street for the purposes of its road, under such a power, is required to locate and construct it so as to leave sufficient space on either side to allow the passage of wagons between its track and the curb of the sidewalk. It has no right to veer from side to side, and interrupt the enjoyment of the street by adjoining lot owners, in front of their premises. Such a course should subject the corporation to damages in favor of the lot owner so encroached upon. In *Cadle* v. *Muscatine Ry. Co.*, 44 Iowa, 11, the liability of the company for such an encroachment was maintained upon the ground of carelessness on the part of the company in the location of its road. The court there held that the owner of adjacent property had an interest in the street entitling him to maintain an action against the company for such a careless or unlawful appropriation thereof, or location of its track thereon, as should be injurious to his property, notwithstanding the city of Muscatine had granted to the company authority to construct its road over such street. The court said: "It was competent for the city of Muscatine to grant to the railroad company authority to construct its road over the street in controversy ; and for a proper exercise of such authority the defendant would not be liable, although such act might diminish plaintiff's enjoyment of his property, and lessen its value." I think the principles of that decision, so far as they recognize the mutual rights of the public and of the adjoining land owners in public highways, and the authority of the legislature to exercise reasonable control over such highways, are correct. But I maintain, further,

that the rights of such adjoining land owners in a part of the adjacent highway sufficient for the reasonable enjoyment of their premises constitute in them a property interest, whether they own the fee to the center of the highway, or merely an easement therein; that in either case it is a proprietary right, which they purchased with the premises, as appurtenant thereto, and which they cannot be deprived of, except by the same power, and upon the same terms, by which they may be deprived of any other property; and that the grounds of liability of a railway corporation for an encroachment upon those rights, under an attempted appropriation of the highway, is not carelessness or negligence in the location of its road, but a wrongful usurpation, which no legislative power can sanction, under the constitution of the State, without providing for just compensation.

Under the view herein expressed, the judgment appealed from must be reversed and the case remanded to the circuit court for a new trial.