DOOLY BLOCK, A CORPORATION, AND OTHERS, RESPONDENTS, *v.* SALT LAKE RAPID TRANSIT COMPANY, APPELLANT.

THOMAS W. JENNINGS AND OTHERS, RESPONDENTS, *v.* SALT LAKE RAPID TRANSIT COMPANY, APPELLANT.

STREETS.—FEE IN MUNICIPALITY.—RIGHTS OF ABUTTERS.—Where the municipality owns the fee of the streets, having acquired the same under the townsite law, the abutting owners have equitable rights by way of easements in the streets, of which equitable rights they cannot be deprived by the municipality except in a manner provided by law.

MUNICIPAL CORPORATIONS.—STREETS.—RAILWAYS.—Even though the fee of the streets be in the municipality, yet it cannot devote the whole width of the street, or so large a quantity thereof as to seriously and unreasonably injure the equitable easements of abutting owners, to street railways, nor can the legislature grant to a municipality the power to make such unreasonable regulations.

ID.—ID.—CHARTER.—Power granted to municipal authorities to exclusively control the streets or to direct and control the location of railroad tracks within the municipality, does not authorize the municipal authorities to devote to street railways the whole width of the street or so large a portion thereof as to seriously and unreasonably interfere with the equitable easements of abutting owners in the streets, which the municipality owns in fee.

INJUNCTION.—MUNICIPAL CORPORATIONS.—STREET RAILWAYS.—An injunction at the suit of abutting owners will be issued against a street railway, which has been granted a franchise for and is proceeding to construct a street railway upon a street which is already incumbered by two street railway tracks, as well as electric light, telegraph and telephone poles, where the street railways already thereon are sufficient for the uses of the public, and the new track will seriously impair and damage the

street for use as a street and the equitable easement of the abutting owners therein.

FINDINGS.—EQUITY.—CONCLUSIVENESS.—Where a case is tried in a court of equity and findings made upon the evidence by the court, such findings are conclusive upon the appellate court, unless they are so manifestly erroneous as to demonstrate some oversight or mistake in the trial court.

APPEALS from judgments of the district court of the third district and from orders refusing new trials. Hon. Charles S. Zane, judge. The opinion states the facts.

*Messrs. Williams and Van Cott* and *Mr. C. B. Jack* for the appellant cited *Railway Co.* v. *Hicks,* 14 Am. and E. R. R. Cases, p. 104, *note* and cases there cited; *Randall* v. *Railway Co.,* 17 Am. and E. R. R. Cas. 184; *Rochette* v. *Railway Co.,* Id. 195 and note; *People* v. *Kerr,* 27 N. Y. 188; *Story* v. *Railway Co.,* 90 N. Y. 122; *Mahady* v. *Railway Co.,* 91 N. Y. 148; *Moses* v. *Railway Co.,* 21 Ill. 515; *Murphy* v. *City of Chicago,* 29 Ill. 279. Also upon question of injunction cited High on Injunctions (2d ed.), secs. 762, 827, 828, 589, 635, 636, 637; *Rochette* v. *Railway Co., supra; Spencer* v. *Railway Co.,* 20 Am. and E. R. R. Cas. 125; *Smith* v. *Railway Co.,* 20 Am. and E. R. R. Cas. 160.

*Messrs. Bennett, Marshall and Bradley,* for the respondents in the first case.

*Mr. Arthur Brown,* for the respondents in the second case.

BARTCH, J.:

The respondents are the owners of certain lots situate in Salt Lake City, and abutting on Second South street, between Main and Second West streets. Two of these lots, one on the north, the other on the south, side of Second

South street, are one block west of Main street, are business property, and, at the time of the trial of the cause, business blocks were being erected thereon. The complaint, in substance, charges that the plaintiffs were respectively the owners of that portion of the street which lies between the center line thereof and the front line of the said lots, subject only to the ordinary use of the public for the purposes of travel; that the plaintiffs are entitled to the free and unobstructed use of the street as a means of access to the said premises; that by authority of Salt Lake City the Salt Lake City Railroad Company constructed on that street a double-track railroad, with wires, poles, and other appurtenances necessary to operate the same with electric power; that the same was being so operated, and afforded all necessary means and convenience to persons who might have occasion to travel on street railroads; that telegraph and telephone lines, and wires and poles for electric light, had been constructed on the street; and that by reason of the several uses with which it had thus been burdered, the ordinary use thereof for public travel and ingress and egress to the several premises had become impeded and embarrassed; that on the 6th day of May, 1890, and after the said street had been burdened as aforesaid, Salt Lake City, by its council, granted the defendant herein authority to construct and operate, by electric power, a street railroad on said street, from First East to Seventh West street; that because of the obstructions already existing thereon, and because another railroad was not necessary for public convenience, the resolution granting the franchise to the defendant was unreasonable and void; that, in pursuance of the authority thus granted, the defendant commenced the construction of a railroad, and threatened to complete the same unless restrained; and that another railroad constructed thereon,

3

with its equipments and operation, in addition to the already burdened condition of the street, would greatly depreciate the value of the plaintiffs' property, and injure its convenient use and enjoyment. The defendant, in its cross complaint, in substance alleges that it owns and operates various lines of street railroads in the city and remote parts thereof, and in densely populated localities in the eastern portion of the city; that for public convenience it should have a line through the business portion of the city, to connect with railway depots and other parts of the city lying west of Main street; that defendant had no franchise connecting its eastern lines with the western portion of the city through the business part thereof, except the one on Second South street; and that in the granting of franchises the city has denied the right to parallel existing lines except in this instance.

The trial court, in substance, found the above allegations of the plaintiffs and defendant to be true, and, among other things, found as facts that the *plaintiffs are the owners of equitable easements in fee of rights of access, ingress and egress to their respective lots in front thereof in the street, and entitled to the free and unobstructed use of that portion of said street as a means of access, such easements extending along the street from the first north and south street east of said lots to the first north and south street west of such lots, the same being subject to the ordinary use of the street by the public; that the fee of the street is in Salt Lake City, in trust for street uses proper; that prior to the granting of said franchise by the city there were constructed and in operation on that street a double-track street railroad, telegraph and telephone lines, wires and poles for electric lighting, and the street had already become greatly obstructed, and access to plaintiffs' property impeded and embarrassed; that because

of the obstructions already existing upon the street the resolution attempting to grant the franchise to the defendant was unreasonable and void; that the two tracks in operation on said street were sufficient to satisfy the demands of public convenience, and there was no necessity for a third track; that its construction would greatly depreciate the value of plaintiffs' property, interfere with its convenient use and enjoyment, and they would thereby suffer irreparable damage; that Salt Lake City, in granting the franchise to defendant, did not act within its lawful authority, nor exercise reasonable discretion for the best interests or convenience of the public; that the two tracks were constructed and are being operated in front of said lots by the Salt Lake City Railroad Company, and are sufficient to permit the passage of all street cars necessary for public convenience, and between the third track, proposed to be constructed, and the sidewalk there would not remain sufficient space for the ordinary traffic of the street, free from unreasonable obstructions; that the defendant has electric street-car lines in operation in the eastern and western portions of said city, but has no other connecting line or franchise except the one on said Second South street passing through the business portion of the city, or reaching the depots of the several steam railroads, such connecting line being of great importance to the defendant, and necessary for the public travel; that the defendant company and the Salt Lake City Railroad Company can operate both of their railways together by means of the two tracks of the last-mentioned company now on that street, which tracks afford sufficient track privileges for all the cars operated, or necessary to be operated, by both companies, for public travel and convenience; and that the construction and maintenance of a third track would be an unnecessary obstruction and interference with the ordinary use of the street, and the means of access to plaintiffs'

premises would be unreasonably and materially abridged and injured. Upon this state of facts the trial court granted an injunction perpetually restraining the defendant from constructing and operating a third track on said Second South street. The defendant moved the court for a new trial upon the following grounds: First, "Insufficiency of the evidence to justify the findings of the court and decree in said case, and that the same were against law." Second, "Errors in law occurring at the trial, and excepted to by the defendant." From the order overruling this motion the defendant appealed to this court.

This leads to the inquiry as to whether or not the construction and operation of the third track upon that street by the defendant involves the taking of property of the plaintiffs, and as to whether the city council of Salt Lake City exceeded its limits of discretion and authority in granting the franchise to defendant. The plaintiffs contend that they are the owners in fee of the lots above mentioned abutting on Second South street, and, as such abutting owners, they are entitled to so much of the bed of the street as lies immediately in front of the lots and to the center of the street, on which the proposed third track is be built, subject only to the ordinary use of the same for the purposes of public travel, and that they are entitled to the use of said street, free from unreasonable obstructions, as a means of access, light, and air to their premises. The defendant maintains that the fee of said street is vested in the corporation of Salt Lake City, and that plaintiffs have no property therein, but are only entitled to the use thereof in common with the people of the city. The plaintiffs admit that the fee is in the city, in trust, however, for street uses proper, and subject to the equitable easements in fee of abutters. The lots and street in question are a part of a larger track entered under section 2387, (Rev. St. U. S.), which provided that

the corporate authorities might enter any portion of the public lands settled upon and occupied as a town site, "in trust for the several use and benefit of the occupants thereof, according to their respective interests." Plaintiff's lots were represented on the original plat of Salt Lake City as fronting Second South street, which was platted in said plat, and when they were purchased under the forms prescribed by the town-site act the grantees secured the right and privilege to have the street forever kept open. When land is settled upon and occupied as a town site, and lots are sold, the right of way over the streets in front of such lots is an appurtenance of necessity, and it requires no special grant in the deed. *Ashby* v. *Hall*, 119 U. S. 526, 7 Sup. Ct. Rep. 308; *Salisbury* v. *Andrews*, 128 Mass. 336. The rights of access, light, and air constitute the principal values of such property, and it must be presumed that when lots are sold the grantees purchase them with a view to the advantages and benefits which attach to them because of these easements. The right of the grantee to their use is precisely the same as his right to the property itself. Such privileges are easements in fee,—incorporeal hereditaments,—and form a part of the estate in the lots. They attach at the time the land is platted and the lots are sold, and will remain a perpetual incumbrance upon the land burdened with them.

It follows that, when land is platted by the owner of the soil, and lots sold, bounded by a street designated and marked on the plat, the grantee acquires a right to the street in front of the premises as a means of access. 1 Hare, Const. Law, 376; Lewis, Em. Dom. § 114; *Story* v. *Railway Co.*, 90 N. Y. 122; *Wyman* v. *Mayor, etc.*, 11 Wend. 487; *Child* v. *Chappell*, 9 N. Y. 246; *Schulte* v. *Transportation Co.*, 50 Cal. 592; *City of Denver* v. *Bayer.* 7 Colo. 113, 2 Pac. Rep. 6. Nor does it matter, in this case, that the fee is in the city in trust for the use of the pub-

lic, instead of in the abutting owner in trust for street uses. Equally in both cases the abutting owners are entitled to the use of the street as a means of access to their lots, and for light and air. If the fee is in the city, the rights of the abutter are in the nature of equitable easements in fee; if in the abutter, they are in their nature legal. In either case the abutters have the right to have the street kept open and not obstructed so as to interfere with their easements, and materially diminish the value of their property. When the lots of plaintiffs were sold under the town-site act, above mentioned, it was, in effect, agreed with the grantees that they were entitled to the use of the street as a means of ingress, egress, light, and air. These rights were inducements to purchasers, became a part of the purchase, are appurtenances to the land which cannot be so embarrassed or abridged as to materially interfere with its proper use and enjoyment, and they are, in effect, property of which the owners cannot be deprived without due compensation. By implication, at least, the grantees also assumed additional burdens, for they must contribute of their own funds for the expense of sewer, gas, and water connections, and as well towards the cost of sidewalks, paving and sprinkling in front of their lots. These are expenditures which devolve upon them as abutting owners, and, in addition to the relation of their lots to the street, give them a special interest in the street in front of their premises, distinct from that of the public at large. Assuming such burdens, they may of right make any and all proper uses of the street, subject to proper and reasonable municipal control and police regulations. Lewis, Em. Dom. § 115; 2 Dill. Mun. Corp. (4th ed.) §§ 556*a*, 556*b*; *McQuaid* v. *Railway Co.*, 18 Or. 237, 22 Pac. Rep. 899; *Haynes* v. *Thomas*, 7 Ind. 38; *Story* v. *Railway Co., supra.* The right of municipalities to grant franchises to private corporations for the construction and operation of street

railways, when empowered by the legislature so to do, is not now, it seems, an open question, although streets were originally not designed for that purpose, but were mostly confined to the right of public travel in the ordinary modes. Enlightened public policy, advanced civilization, and a desire to subserve public interest, have induced courts to become more lax in the enforcement of strict technical rules and principles in this regard, and it appears now to be well settled by judicial authority that a reasonable portion of a street may be devoted for the purposes of a street railway, and that such is a proper use of the street.

Counsel for appellant contend that, subject to special constitutional restrictions, the legislature has plenary power over all public ways and streets. If this position be tenable, then, in the absence of special constitutional restrictions, the legislature may authorize municipalities to devote the entire width of a street to railroad uses, regardless of the property rights of abutting owners, without compensation for injury to their property. This theory does not appear to be sustained by the authorities. The legislature may delegate power over streets to municipalities, but in doing so it must recognize the property rights of private individuals. Judge Dillon, in his work on Municipal Corporations, (volume 2, § 656*a*,) speaking of the nature of streets and legislative control, says: "Public streets, squares, and commons, unless there be some special restriction when the same are dedicated or acquired, are for the public use, and the use is none the less for the public at large, as distinguished from the municipality, because they are situate within the limits of the latter, and because the legislature may have given the supervision, control, and regulation of them to the local authorities. The legislature of the state represents the public at large, and has, in the absence of special constitutional restraint, and subject (according to the weight of more recent judicial opinion) to the property

rights and easements of abutting owners, full and paramount authority over all public ways and public places." It will be observed that the learned author distinctly recognizes "the property rights and easements of abutting owners," and, subject to these, the legislature "has full and paramount authority over all public ways and public places." Up to within a comparatively recent date, the current of judicial opinion drew a distinction between cases where the fee was in the abutting owner, subject to street uses proper, and those where the fee was in the municipality in trust for the use of the public. In the latter class of cases it was uniformly held that the power of the legislature to authorize the construction of a railroad on the street of a city was paramount, and that it could delegate such power to the local authorities. Of the exercise of this power the abutting owner could not complain, and had no right to compensation for injury to his easement caused by the appropriation of the street to such purposes. In the former class of cases he was entitled to compensation for the injury sustained by such appropriation. The case of *Railroad Co.* v. *Hartley*, 67 Ill., 439, supports this view. Mr. Justice Scott, in deciding the case, said: "A distinction has been taken where the municipality granting the right to lay the track owns the fee in the streets, and where the fee remains in the abutting owner, and it seems to us that it rests on sound principle, and is supported by the highest authority."

That case was decided in January, 1873, and such, it must be conceded, was the weight of authority at that time. Then the cases turned upon the question whether the fee was in the public or in the abutter, in many of them without close inquiry as to the exact limitation of the fee; and it was almost universally held that, if the fee was in the abutter, the legislature could not authorize a private corporation to construct a railroad on a public

street without compensation to the abutter, and likewise it was almost universally held that, if the fee was in the public, the legislature could authorize the street to be used for such purpose without compensation to him. Since then the whole subject has undergone deliberate reconsideration, and the weight of recent judicial decision seems to abrogate the distinction and treat the easements of abutting owners as property rights forming part of the estate in the property, except in cases where the public owns the absolute fee of the street and the fee is not limited to street uses proper. In such cases the tendency is still to hold that the legislature, in the absence of special constitutional restraint, may authorize a railroad company to use the street of a city for its roadbed without compensation to the abutter. It might be observed, however, that even in this class of cases there seems to be no just or satisfactory reason why such a use of a street, which is specially beneficial to the grantee of the franchise, and causes a special injury to the abutter, should be within the absolute control of the legislature, without regard to the property rights of the abutting owner. Speaking of the nature of public streets and of the rights of the abutter and of the public, Judge Dillon (in section 656*a* Mun. Corp.) observes: "The full conception of the true nature of a public street in a city, as respects the rights of the public on the one hand and the rights of the adjoining owner on the other, has been slowly evolved from experience. It has been only at a recent period in our legal history that these two distinct rights have, separately and in their relations to each other, come to be understood and defined with precision. The injustice to the abutting owner arising from the exercise of unrestrained legislative power over streets in cities was such that the abutter necessarily sought legal redress, and the discussion thence ensuing led to a more careful ascertainment

of the nature of streets, and of the rights of the adjoining owner in respect thereof. It was seen that he had, in common with the rest of the public, a right of passage. But it was also further seen that he had rights not shared by the public at large, special and peculiar to himself, and which arose out of the very relation of his lot to the street in front of it; and that these rights, whether the bare fee of the street was in the lot owner or in the city, were rights of property, and, as such, ought to be, and were, sacred from legislative invasion as his right to the lot itself." In support of this view of the question he cites, among numerous other cases, *Story* v. *Railway Co.*, *supra*, which is the leading recent case in New York on this subject. In this case Justice Danforth, after an elaborate and exhaustive review of the authorities, concludes: "In whatever way, therefore, we view the plaintiff's case, the result is the same,— a right of property in the street, with which, until properly appropriated and compensation made, the defendant cannot intermeddle." 2 Dill. Mun. Corp. § 704; *Lahr* v. *Railway Co.*, 104 N. Y. 268, 10 N. E. Rep. 528; *Railway Co.* v. *Brown*, (Fla.) 1 South. Rep. 512; *Mahady* v. *Railroad Co.*, 91 N. Y. 148; *Railroad Co.* v. *Reinhackle*, 15 Neb. 279, 18 N. W. Rep. 69; *Railway Co.* v. *Cumminsville*, 14 Ohio St. 523; *New York El. Ry. Co.* v. *Fifth Nat. Bank*, 135 U. S. 433, 10 Sup. Ct. Rep. 743; *Railroad* v. *Schurmeir*, 7 Wall. 272; *Theobold* v. *Railway Co.*, 66 Miss. 279, 6 South. Rep. 230.

In this case the learned court found that the fee of Second South street is in Salt Lake City, in trust for street uses proper; and of this appellant does not complain. Therefore, under the law as applied to this class of cases, plaintiffs have property rights in the street in front of their lots, and the street is not subject to the absolute control of the legislature, nor can the legislature confer such control upon the city council. While the legislature

can authorize municipal authorities to permit private corporations to construct and operate street-railway lines upon the street, the authority thus conferred must be exercised within the limits of reasonable discretion, and not so as to materially injure the property of abutters. And this leads to a consideration of the power exercised · in this case. Did the city council, in granting the franchise, act within the scope of its authority, and with a reasonable exercise of discretion? Section 340, 1 Comp. Laws Utah 1888, authorizes Salt Lake City as follows: "To exclusively control, regulate, repair, amend, and clear the streets," etc., "and open, widen, straighten, or vacate streets," etc., "and prevent the incumbering of the streets in any manner, and protect the same from any encroachment and injury." If "to exclusively control the streets" were taken alone and construed literally, it might confer plenary power, and then, if this were not subject to judicial control, the abutting owners could have no redress, though the injury to their property, caused by acts of the city council, might be very great, but it is also provided to "prevent incumbering of the streets in any manner, and to protect the same from any encroachment and injury;" and this is just what respondents ask for in this case. It is apparent from this section that the legislature intended to confer no power that would injuriously affect the property rights of abutting owners. Subdivision 5, § 389, Id., referring to the powers of Salt Lake City, provides: "To direct and control the location of railroad tracks and depot grounds within the city, and regulate or prohibit the use of locomotive engines thereon, and may require the cars to be used within the inhabited portions thereof to be drawn or propelled by other power than that of steam." This is the statute law of this Territory, relied on by counsel for appellant, as applicable to this case. Construed in the light of reason and justice, these enactments do not author-

ize the city council to grant a railroad franchise if the construction of the road will injure and materially depreciate the value of the property of abutters. When the railroad company has obtained, under the law of eminent domain or otherwise, in cases where the streets are already burdened to the extent that natural justice will allow, a right of way, then the council has the power "to direct and control" the location of the tracks.

According to the evidence, as appears from the record in this case, Second South street is one of the principal business streets running east and west, and, at the date of the granting of the franchise to the defendant and of the trial of the cause, there were in operation upon that street two railroad tracks, which were located in the center of the street, with a line of poles between them. There were also many electric light, telegraph, and telephone poles placed in line on each side of the street about four feet from the sidewalk, and on these poles were stretched numerous electric wires. The two tracks in operation were constructed with T rails, which project several inches above the surface of the street, and render the crossing of the tracks with vehicles difficult and dangerous, the street not being paved. The appellant proposed to construct its track in a similar way on the north side of the present tracks, and to erect additional poles, which would still further obstruct the ordinary travel, and render the respondents' property less accessible for business purposes. The tracks already upon said street afford ample facilities to run all the cars necessary for public convenience; and the construction of the third track would be a serious impediment to the ordinary mode of travel, as it would not leave sufficient space between the outside rails and the gutter for vehicles to pass each other with safety. Where the track privileges of one company on a city street are sufficient for the business of two or more companies, they

should all be required to use them in common. The construction of an additional track, under the circumstances of this case, would be an unnecessary obstruction to and interference with the ordinary use of the street, and a special injury to the property rights of the abutters, and on proper application a court of chancery may grant injunctive relief. In such a case an abutting owner need not stand by and see his property injured without having any means of redress. Dill. Mun. Corp. § 661; *Uline* v. *Railroad Co.*, 101 N. Y. 98, 4 N. E. Rep. 536; *Ogden City Ry. Co.* v. *Ogden City*, 7 Utah, 207, 26 Pac. Rep. 288; *Pond* v. *Railway Co.*, 112 N. Y. 186, 19 N. E. Rep. 487; *Story* v. *Railway Co., supra.*

Counsel for appellant insist that the several findings of fact to the effect that the construction of the third track would be an unreasonable obstruction of the street, and that the granting of the franchise for that purpose by the city council was unlawful, and an unreasonable exercise of discretion, are not justified by the evidence. There appears to be some conflict in the evidence on this point, but, the learned judge having heard the evidence and having had the opportunity to observe the manner and bearing of the witnesses while testifying, this court will not disturb the conclusions reached, especially since the record shows them to be fair and logical deductions from the testimony. Where a case is tried in a court sitting as a court of chancery, the findings of fact are conclusive in the appellate court, unless they are so manifestly erroneous as to demonstrate some oversight or mistake. *Wells* v. *Wells,* 7 Utah, 68; *Ullman* v. *McCormic,* 12 Colo. 553, 21 Pac. Rep. 716; *Doe* v. *Vallejo,* 29 Cal. 386; *Coryell* v. *Cain,* 16 Cal. 567; *Coolidge* v. *Smith,* 129 Mass. 554. The record reveals no material error committed during the conduct of the trial, and we are of the opinion that the act of the city council of Salt Lake City granting the franchise to

the appellant was unlawful, as being an unreasonable exercise of discretion, and is therefore of no avail to it. The judgment is affirmed.

MINER, J., concurred.