THE STATE, HENRY TRAPHAGEN AND PHŒBE A. WATSON, PROSECUTORS, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

The common council of Jersey City, under its power to pass ordinances to regulate or prevent the use of streets for any other purposes than public travel, has no power, by ordinance, to confer upon a railroad company a right to occupy exclusively twelve feet of a fifteen feet sidewalk of a street by the erection thereon of a freight platform and roof.

---

This writ of *certiorari* brings up an ordinance passed by the mayor and common council of Jersey City.

Argued at June Term, 1889, before Justices REED, MAGIE and GARRISON.

For the prosecutors, *H. Traphagen* and *H. M. T. Beekman.*

For the defendants, *Cortlandt Parker.*

The opinion of the court was delivered by

REED, J. On May 22d, 1888, the mayor and common council of Jersey City passed the following ordinance: "An ordinance to authorize the New York, Lake Erie and Western Railway Company to maintain a platform for freight on the north side of Tenth street, between Grove and Henderson streets."

The first section provides as follows: "That permission is hereby granted the New York, Lake Erie and Western Railway Company to maintain a platform for freight on the north side of Tenth street, between Henderson and Grove streets, which may extend to within three (3) feet of the curb line, and to construct a shed over said platform to protect freight from weather."

The second section provides: "That the said platform may continue until this ordinance is repealed."

It appears from the testimony taken in the cause and the agreement entered into by the parties as a statement of facts, that Tenth 'street is sixty feet in width. The general ordinances of Jersey City provide that the sidewalks of streets of this width shall be fifteen feet in width.

The title to the land on the north side of Tenth street, between Grove and Henderson streets, is in the Long Dock Company, under whom the New York, Lake Erie and Western Railroad Company hold as lessees. The distance between Grove and Henderson streets seems to be at least three hundred and fifty feet, for the building erected by the railroad company, and which is said to cover fifteen feet of the sidewalk, is three hundred and fifty feet in width on Tenth street.

Mr. Traphagen and Phœbe A. Watson, the prosecutors, are the owners of land on the south side of Tenth street, between Henderson and Grove streets.

The question presented is, whether the common council of Jersey City had the power to pass the ordinance in question. The charter of the said city confers upon the board of aldermen power to pass, alter and repeal ordinances to take effect within said city for certain purposes. Among the enumerated purposes for which said ordinances can be passed, are the following:

"11. To regulate the use of streets and public places by foot passengers and vehicles, railways and engines.

"12. To regulate or prevent the use of streets for any other purposes than public travel, and to provide for the removal of any encroachment on streets or public places."

The defendants insist that the power above conferred to regulate the use of streets for any other purpose than public travel is a legislative warrant for the enactment of the ordinance now challenged.

The result of this contention obviously is to attribute to the words " power to regulate " the force of a power to permit the use or grant the right to use streets for any other purposes than public travel. The significance of this construction would lie in the words " any purpose," so that a literal inter-

pretation of the charter would confer the power upon council to grant the use of the street for any purpose other than the use to which it has been dedicated or devoted, namely, the passage of the public. This construction of the power conferred would undoubtedly enable the common council to pass an ordinance which would give a railroad company the right to occupy not only a part, but all of a street with its freight house and platforms.

I am aware that the counsel who very properly appeared for the railroad company did not insist that this plenary power exists in the common council, but I do not think it is possible to stop short of this instance if the validity of the present ordinance is to be rested upon the power contained in the charter.

The use of Tenth street in the manner in which this ordinance permits cannot be included in any of the uses of the street which usage has sanctioned. There are undoubtedly many uses which are not directly connected with public travel to which a street can be devoted. Among such are the building of sewers, the laying of gas pipes and water pipes, the placing of telegraph or telephone or electric light poles therein and the stringing of wires overhead. This class of uses are essentially of a public character, and depend upon legislative sanction for their validity.

Then there are a number of uses to which the owner of lands bordering upon a street can resort to; among such are the placing of building materials, or of wood or coal temporarily in the street, until such material can be used, or the coal or wood stored for use. So, the retention of wagons upon the street until they can be loaded or unloaded in front of places of business is a use of a similar character which seems to be legitimate without legislative sanction, subject to control by the municipality under its power to regulate. But the structure which the ordinance in question permits, and which the railroad company has erected, is not a use of a street of the kind already mentioned. The result of the construction of this freight platform and roof is to exclude public travel

from the sidewalk of Tenth street and devote it to the private business of the railroad.

Says Judge Dillon: "The usual power to regulate and control streets has been held not to authorize the municipal authorities to allow them to be encroached upon by the adjoining owner by erections made for his exclusive use and advantage, such as porches extending into the streets, or flights of stairs leading from the ground to the upper stories of buildings standing on the line of the street." *Dill. Mun. Corp.,* § 661.

In *Montgomery* v. *Inhabitants of Trenton,* 7 *Vroom* 79, the common council of the city of Trenton had authorized by ordinance certain persons to construct a railroad track for the purpose of running logs across the street to a saw mill. The road was to be constructed with the consent of the property owners fronting on the street at that point. It was to be built at grade under the supervision of common council, and so as not to interfere with the travel of the said street, and the power was reserved in the ordinance to order the said road to be removed whenever the common council should consider it incompatible with public interests. It was held that this was not a legal exercise of the charter power to regulate streets. Justice Van Syckel said: "Streets are intended for the common and equal rights of all citizens, to which end they must be regulated. An appropriation of them to private individual uses from which the public derived no convenience, benefit or accommodation, is not a regulation, but a diversion of them from their lawful purposes, and cannot be regarded as an execution of the trust reposed in the city authorities."

I regard the erection of the platform and roof in the present instance, similarly as an appropriation of the public highway to private interests, and that the power given to council in their charter does not authorize the present ordinance.

The ordinance is vacated, with costs.

GARRISON, J. (*dissenting*). In *Montgomery* v. *City of Trenton*, 7 *Vroom* 79, it was decided that the prosecutors, who were owners and residents on West State street, could not invoke this court by *certiorari* to set aside an ordinance by which the common council had authorized the obstruction of the said street by a private railroad track. The obstruction was pronounced a nuisance, because the ordinance in question was an illegal exercise of power by the council; but inasmuch as the prosecutors were injured in common with the public generally, their right of private action in the premises was denied, and their writ was dismissed.

In that case the prosecutors lived in a street across the whole of which the proposed nuisance extended; in the present case they own a tenement on a street the opposite sidewalk of which is narrowed by the obstruction. No loss of rent or other special injury is shown.

To maintain a nuisance across the entire highway upon which plaintiffs reside in their own property savors more of special injury than to narrow the opposite sidewalk of a street on which plaintiffs own tenement houses.

Upon the authority of Montgomery *v.* Trenton, this writ should be dismissed.