## WILLAMETTE IRON WORKS *v.* OREGON RAILWAY AND NAVIGATION COMPANY.

[S. C. 37 Pac. Rep. 1016.]

1. ADDITIONAL SERVITUDE ON PUBLIC STREET—COMPENSATION TO ABUTTING OWNERS.— An abutting proprietor has a property right in the use of the street in front of his premises to its full width as means of ingress and egress and for light and air, subject always to the right of the municipality to regulate and control the same for legitimate street purposes, but any structure on a street which is subversive of its use and efficiency as a public thoroughfare is not a legimate street use, and imposes a new servitude on the rights of abutting owners for which compensation must be made.— *McQuaid* v. *Portland and Vancouver Railway Company*, 18 Or. 237, cited and approved. *

2. EMINENT DOMAIN—ADDITIONAL SERVITUDE ON PUBLIC STREETS—DAMAGES. A solid structure thirty feet wide erected in the middle of a street sixty-six feet wide and curving so as to leave on one side a passageway only eight feet wide, built as an approach to a toll bridge owned by a private corporation, not forming a part of or an extension of any public highway, although authorized by the legislature and city authorities, constitutes a servitude on the abutting property, for which proper compensation must be made.

3. EMINENT DOMAIN—ALTERING STREET GRADE.— No portion of a public street can lawfully be appropriated to exclusive and permanent private use under the guise of an exercise of power to alter or change the grade; and it is not a change of grade to construct in a public street an elevated approach to a private toll bridge.*

4. CONSTITUTIONAL LAW — EMINENT DOMAIN — JURISDICTION OF EQUITY — INJUNCTION.— Where statutory provision has been made for determining the

*On the subject of injury to an abutter's easements by vacating streets or changing grade the authorities have been collected in a note to the Florida case of *Selden* v. *Jacksonville* in 14 L. R. A. 370.—REPORTER.

compensation to be paid for private property taken for public use, and payment has been made a condition precedent to the taking, equity will interfere by injunction to prevent the property being used, or to require the use to be abated, until the condition has been complied with.

EMINENT DOMAIN — INJUNCTION.— Where the taking for public use of an easement in a street was with the knowledge of and without objection by the abutting property owner, but under representations that such taking was intended as temporary, and the property is put to a considerable public use, an injunction to restrain its further use should not be made mandatory until after a reasonable time in which the easements of the private owners may be acquired.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

This is a suit by an abutting owner to enjoin and restrain the defendant from occupying a portion of the street in front of plaintiff's property with an approach to its bridge across the Willamette River at Portland.   The plaintiff's premises are situated on the west side of Third Street, and are bounded on the south by G Street, on the north by H Street, and on the west by Fourth Street, and occupying that portion of the property abutting on Third Street is a two-story brick and iron building, used as a foundry and machine shop.   Third Street is about sixty-six feet wide, and runs northerly through the city to the north line of said H Street.   In eighteen hundred and eighty-seven the legislature granted to the defendant the right to construct and maintain a bridge, with proper and convenient approaches, across the Willamette River, between the then cities of Portland and East Portland, for the purpose of travel and commerce, as a railroad, wagon road, and passenger bridge, and to charge and collect tolls and fares thereon: Laws, 1887, p. 252.   Subsequently the City of Portland, by ordinance, granted to defendant the right to build on Third Street "a solid roadway and approach to said bridge from the north line of G Street to the center line of H Street, said approach to be on an

26 OR.—29.

ascending grade from G Street, and to be built as a solid construction, not exceeding thirty feet in width." In pursuance of the permission thus given by the legislature and the City of Portland, the defendant proceeded to and did construct from a point about six hundred feet east of Third Street a double-decked steel bridge across said river,—not, however, as a part of or extension of any public highway,—and from the upper deck thereof, which is used for wagon and passenger traffic, constructed an elevated roadway substantially at right angles to Third Street, over and across private property to the east end of H Street, where by a curve it was connected to an approach in Third Street, as provided in the ordinance referred to. This approach is thirty feet wide, and occupies the middle of the street in front of plaintiff's property for about three fourths of the distance north from G Street, and then turns to the east on a curve so that at a point opposite the north line of plaintiff's property it is about thirty-five feet from the west line of the street, while at the south end, and for a greater portion of the distance along the block it is only about twenty feet from the street line and about eight feet from the sidewalk, a space not sufficient for wagons to pass each other. At the junction of Third and H Streets, and opposite the north line of plaintiff's property, it is about thirteen and a half feet above the street surface, and from that point descends southerly by a gradual descent, reaching the surface of the street at the intersection of Third and G Streets, forming an effectual barrier to the crossing of that part of the street by vehicles. It is supported by timbers resting on the street surface, and is so constructed and timbered as to be practically a solid structure, necessarily constituting an exclusive and permanent occupation and appropriation to the use of the defendant of that portion of Third Street covered by it. The decree of the court below was

in favor of the plaintiff affirming the report of G. G. Gammans, Esq., referee, and defendant appeals.

                                                        Affirmed.

*Mr. William W. Cotton* (*Messrs. Cox, Teal & Minor,* and *Snow & McCamant* on the brief), for Appellant.

*Mr. James Finley Watson* (*Mr. Edward B. Watson* on the brief), for Respondent.

Opinion by Mr. Chief Justice Bean.

1.   Counsel for defendant seeks to reverse the decree of the court below on the grounds (1) that the erection of the bridge and its approach in Third Street, under legislative and municipal authority, violates no property rights of plaintiff, and consequently it is without remedy, although its property may be injured; and (2) the plaintiff's remedy, if it has any, is by an action at law to recover damages, and not by suit for an injunction.   But few questions have come before the courts in recent years involving larger pecuniary interests or of greater practical importance, or which have provoked more discussion, than those growing out of the enforcement by abutting lot owners of their right to compensation for the occupation and use of streets under legislative or municipal authority by private corporations for public use, under constitutions like ours, which provide that private property shall not be taken for public use without just compensation.   It is quite generally agreed that any proper exercise of governmental power over a street in a municipality, for street purposes, which does not directly encroach upon the abutting property of an individual, though the consequences may be to impair its use, is not a taking within the meaning of the constitution, and will not entitle the adjoining proprietor to compensation, or give him a right of action: Cooley on Constitutional Limitations (5th ed.), 671; *Transportation*

*Company* v. *Chicago*, 99 U. S. 635. It is within this principle that changes of grade; the use of a street for a surface street railroad; the erection of lamps, hitching posts, telephone, telegraph, and electric light poles; the laying of sewer and water pipes; the crossing of streets over railway tracks by means of elevated viaducts, are, when authorized by lawful authority, held *damnum absque injuria,* although the abutting owner· may be seriously injured, and the value and· usefulness of his property greatly impaired. This is upon the ground that individual interests in streets are subservient to those of the public, and that an adjoining owner received full compensation for such injury as might result to him or his grantees from the use of the street for proper street purposes at the time of the dedication or appropriation of the land therefor. But there is a limitation to legislative or municipal power over a street, which cannot be exceeded without invading the constitutional rights of abutting owners. An abutting proprietor is entitled to the use of the street in front of his premises to its full width as a means of ingress and egress, and for light and air, and this right is as much property as the soil within the boundaries of his lot; and therefore any impairment thereof or interference therewith, caused by the use of the street for other than legitimate street purposes, is a taking within the meaning of the constitution, whether the fee of the street is in the abutting owner or not. He holds his property subject to the power of the proper legislative authority to control and regulate the use of the street as an open public highway, and hence any authorized use thereof, though a new one, gives him no cause of action. But such holding is not subject to the legislative power to divert the street from legitimate street purposes by authorizing a structure thereon which is inconsistent with its continuous use as an open public street. Any structure on a street which is

subversive of and repugnant to its use and efficiency as a
public thoroughfare is not a legitimate street use, and im-
poses a new servitude on the rights of abutting owners,
for which compensation must be made: Elliott on Roads
and Streets, 526; Tiedeman on Municipal Corporations,
301; Lewis on Eminent Domain, § 126; Booth on Street
Railway Law, §§ 80, 81; 2 Dillon on Municipal Corpora-
tions, §§ 711, 712, 723c; *McQuaid* v. *Portland and Vancouver
Railway Company*, 18 Or. 237, 22 Pac. 899: *Story* v. *New York
Elevated Railroad Company*, 90 N. Y. 122, 43 Am. Rep. 146;
*Lahr* v. *Metropolitan Railway Company*, 104 N. Y. 268, 10
N. E. 528; *Reining* v. *New York, etc., Ry. Co.* 128 N. Y. 157, 14
L. R. A. 133, 28 N. E. 640; *Corning* v. *Lowerre*, 6 Johns. Ch.
439; *Barney* v. *Keokuk*, 94 U. S. 324; *State* v. *Mayor of Jersey
City*, 52 N. J. L. 65, 18 Atl. 586, 696.    As said by ANDERWS,
J., in *Kane* v. *New York Elevated Railroad Company*, 125 N.
Y. 165, 11 L. R. A. 640, 26 N. E. 278: "However difficult
it is to trace its origin, or to refer it to any exact legal
principle, it is undoubtedly the prevailing doctrine of
American jurisprudence that the owner of a lot abutting
on a city street, the fee of which is in a municipality, has,
by virtue of proximity, special and peculiar rights, facili-
ties, and franchises in the street, not common to citizens
at large, in the nature of easements therein, constituting
property of which he cannot be deprived by the legisla-
ture or municipality, or by both combined, without com-
pensation."    And in *Story's Case*, 90 N. Y. 122, 43 Am.
Rep. 146, the rule is thus stated by TRACEY, J.: "While
the legislature may regulate the uses of the street as a
street, it has, we think, no power to authorize a structure
thereon which is subversive of and repugnant to the uses
of the street as an open public street.    Whether a partic-
ular structure authorized by the legislature is consistent
or inconsistent with the uses of the street as a street must

be largely a question of fact, depending upon the nature and character of the structure authorized."

2.    This brings us to the question, then, whether the occupation of Third Street by the approach to defendant's bridge is compatible with or destructive of its use as an open public street.   As already stated, this street is about sixty feet in width, and the approach complained of is practically a solid structure thirty feet wide in the middle of the street, so that no use can be made of that portion of the street occupied by it except by persons desiring to use defendant's bridge and pay toll therefor.   In other words, it is in fact an appropriation of a public street to the exclusive use of a private corporation, and to the manifest injury of an abutting proprietor.   The plaintiff and the public are absolutely and permanently excluded from the use for general street purposes of all that portion of Third Street covered by the approach.   It practically terminates the street as an open public thoroughfare at the north line of G Street, in place of the north line of H Street as it is laid out and dedicated; and the only roadway in front of plaintiff's property is but a few feet wide, and quite insufficient for the proper and necessary use of such property, or for the accommodation of public travel. While the city authorities undoubtedly have power to authorize the use of the street for legitimate street purposes, we do not think the public can justly demand or require such a sacrifice of private interests, or justify such an exclusive and permanent appropriation of a street in aid of a private enterprise, although for public purposes, as is contemplated in this case.   It may be conceded that the general interests of Portland and the public at large are promoted by the appropriation of the street to the purposes of an approach to defendant's bridge; but it by no means follows that the burden of such a public improvement can rightfully be cast upon this plaintiff by ap-

propriating its property for the public benefit, without
compensation.   We think, therefore, that while it is com-
petent for the legislature or municipality to authorize the
use of a street for legitimate street purposes, without mak-
ing compensation to abutting owners for consequential in-
juries to their property, they cannot legally authorize
structures of the character complained of to be erected
thereon for the use and convenience of a private corpora-
tion, and which absolutely and permanently exclude the
public and the abutting owner from the portion of the
street so occupied, without compensating the adjoining
proprietor for the injury sustained.

3.   The argument that the building of the approach was
a mere change of the grade of the street, authorized by
proper municipal authority, is clearly untenable.   The City
of Portland has undoubted plenary power to alter or change
the grade of a public street by proper proceedings under
its charter, but the act of the municipal authorities in
granting defendant permission to occupy the street did
not purport to be an exercise of such power.   It was sim-
ply conferring upon the defendant, so far as the city was
able, the right to the exclusive and permanent use of a
portion of the public street; and while such permission
included as a consequence the construction of a solid road-
way above and over the street surface, it does not follow
that what was done was in exercise of the power to alter
or change the grade of a street.   The street grade re-
mained the same after the approach was built as before,
and this approach is no part of the street, but is foreign
thereto, and as useless for general street purposes as any
of the structures referred to in the cases cited.   We do
not think a public street, or any portion thereof, can
lawfully be appropriated to the exclusive and permanent
use of a private corporation under the guise of an exercise
of the power to alter or change the grade.   The primary

object of this grant of power is to enable the municipality to make the streets safe and convenient for public travel, and not to divert them from legitimate street purposes to the exclusive use of some private corporation. Conceding, therefore, that defendant occupies this street by lawful authority, and hence its structure is not a nuisance, yet it invades the legal rights of an abutting owner, and is an appropriation of the property of such owner without compensation, which is beyond the power of the legislature or municipality, or both, constitutionally, to authorize or sanction.

4. The defendant's counsel also claims that plaintiff's remedy is by action at law to recover damages, and not by a suit in equity to enjoin and restrain the defendant from maintaining the approach complained of. He relies principally upon the case of *Osborne* v. *Missouri Pacific Railway*, 147 U. S. 248, 13 Sup. Ct. 299. This was a suit by an abutting owner to enjoin the defendant from laying down its railroad track at street grade under competent municipal authority, on the ground that the track would be a permanent obstruction, and the damage threatened to be done complainant was irreparable, and could not be compensated for by a recovery in an action at law. The constitution of Missouri provides that private property shall not be taken or damaged for public use without just compensation; but, while the statutes of that state contain ample provisions for the assessment of compensation for the taking of property, there is no provision therein for such assessment when the property is merely damaged. It was therefor held, that as the laying down of defendant's track at the grade of the street was not an exercise of the power of eminent domain, or the taking of private property for public use, there was no proceeding authorized by law which the railway company could avail itself of, to obtain an assessment of damages, while the complainant

had an adequate remedy by action at law, and therefore the injunction should be denied, and the plaintiff remitted to his remedy at law.   But in this case, as we have endeavored to show, the act sought to be restrained is a taking of private property for public use, and in such cases our statute has made adequate provision for the assessment of compensation therefor.   Provision is not only made by statute for determining the compensation to be paid the owner, but its payment is made a condition precedent to the right to take the property, and it is within the power of the defendant to comply with this condition.   In such case, as we understand the rule, an injunction will almost universally be granted, at least until the condition is complied with.   The rule is very clearly stated by Mr. Chief Justice FULLER in the case referred to as follows: "Whenever the power of eminent domain is about to be exercised without compliance with the conditions upon which the authority for its exercise depends, courts of equity are not curious in analyzing the grounds upon which they rest their interposition.   Equitable jurisdiction may be invoked in view of the inadequacy of the legal remedy, where the injury is destructive, or of a continuous character, or irreparable in its nature; and the appropriation of private property to public use under color of law, but in fact without authority, is such an invasion of private rights as may be assumed to be essentially irremediable, if, indeed, relief may not be awarded *ex debito justitiæ.*   But where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial, and the remedy at law in fact inadequate, before restraint will be laid upon the progress of a public work.   And if the case made discloses only a

26 OR.— 30.

legal right to recover damages, rather than to demand compensation, the court will decline to interfere." To the same effect is Booth on Street Railway Law, 189; Elliott on Roads and Streets, 536; Tiedeman on Municipal Corporations, § 307; 2 Dillon on Municipal Corporations, § 723*d*; *Story* v. *New York Elevated Railroad Company,* 90 N. Y. 179, 43 Am. Rep. 146; *Lahr* v. *Metropolitan Elevated Railroad Company,* 104 N. Y. 268, 10 N. E. 528; *Columbus Railway Company* v. *Witherow,* 82 Ala. 190, 3 So. 23; *State* v. *Berdetta,* 73 Ind. 185, 38 Am. Rep. 117.

5. As the structure, the maintenance of which is sought to be restrained in this case, is permanent and exclusive in its character, and, if suffered to continue as now located, will inflict a continuing and permanent injury upon the plaintiff, we think it manifest that it is entitled to restrain the continuation thereof by an injunction; but as it was constructed with the knowledge of and without objection by plaintiff, on the assurance, however, of the defendant, that it was only intended as a temporary expedient and not as a permanent structure, and the fact that it has become and is one of the principal avenues across the river, and daily used by a large number of electric cars, wagons, and foot passengers, the injunction should not be made mandatory until the defendant has had a reasonable time after the mandate is filed in the court below, to be determined by that court, to acquire the plaintiff's easements in the street by agreement or by proceedings to condemn the same if it should be so advised. It follows that the decree of the court below must be affirmed, and the cause will be remanded for further proceedings in accordance with this opinion.

AFFIRMED.