Argued June 23, reversed July 6, rehearing denied July 27, 1915.

## TOOZE *v.* WILLAMETTE VALLEY SOUTHERN RY. CO.*

(150 Pac. 252.)

**Navigable Waters—Tide-lands—Right to.**

1. An alien platted a large tract of public land abutting on a stream. Many of these parcels were sold to others. The federal government recognized the titles of the purchasers, confirming them. Thereafter the state granted to the upland owners along the stream

*The right of owner of upland to access to water is discussed in extensive notes in 40 L. R. A. 593; 22 L. R. A. (N. S.) 345.

As to right of railroad in street as relating to abutters' rights, see note in 36 L. R. A. (N. S.) 673.

As to effect of street on shore, see notes in 58 L. R. A. 208; 4 L. R. A. (N. S.) 881.   REPORTER.

all the property of the state lying between high and low water lines. *Held*, that plaintiff, who owned the fee of the upland, acquired the land between high and low water lines, though the plat provided for a highway between high and low water mark; plaintiff taking such lands subject to the easement of the highway.

[As to title to lands covered by navigable waters, see note in 53 Am. St. Rep. 289.]

**Pleading—Departure—What Constitutes.**

2. In a suit to enjoin a railroad company from erecting a trestle on land lying between plaintiff's upland property and low-water mark, the complaint asserted that plaintiff was the absolute owner in fee of all the land on which the trestle was to be built. The reply conceded that a street existed between the platted lines and low-water mark of the river. *Held*, that the reply did not constitute a departure preventing recovery; the concession that a street existed merely diminishing relief to which plaintiff was entitled.

**Eminent Domain—Streets—Property Right of Abutting Owner.**

3. An abutter who owned the fee of a street has a right to use that street to gain access to his property different from the rights of other members of the public, and, having such property right, he cannot be deprived thereof by a railroad company until he receives compensation for his damages as provided by Article I, Section 18 and Article XI, Section 4, of the Constitution.

**Municipal Corporations—Obstruction of Streets—Remedy.**

4. The right of the owner of the fee of the street to prevent the erection of unlawful structures will be protected by injunction.

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by Charles T. Tooze against the Willamette Valley Southern Railway Company, a corporation.

The plaintiff says he is the owner of block 12 and lot 7 in block 11 in Oregon City, together with the tenements, hereditaments and appurtenances thereunto belonging. He also avers that the premises constitute the easterly bank of the Willamette River at that point, the ordinary high-water line of which is upon tracts described. The substance of the complaint is that the plaintiff owns the property to low-water line of the navigable stream mentioned, with the attendant privilege of building wharves in front of the

same. The grievance of which he complains is that the defendant railroad company threatens to and is about to construct on the westerly part of his holding, presumably on the space between high and low water mark, a large railway trestle averaging nearly 30 feet in height and permanent in character, which will prevent him from going upon or using the ground thus occupied, cut off his access to the navigable stream, and impair his enjoyment of that portion of the realty.

The defendant alleges that the land was originally platted by Dr. John McLoughlin; in detail traces the title from the United States government to the present time, averring that the ground to be occupied by the trestle mentioned is a public street, and that its right to construct a trestle is based upon an ordinance passed by the city council of Oregon City which it sets forth.

After sundry denials the reply alleges, in substance, that the structure intended will be a permanent obstruction of the street mentioned and of the streets connecting therewith on the north and south of the plaintiff's block, and will impair plaintiff's rights in the streets as a public highway. The Circuit Court, after its hearing, decreed:

"That the plaintiff is not entitled to any of the relief prayed for in his complaint. The right, however, is hereby reserved upon a proper and reasonable showing to enjoin the operation of steam locomotives over the railroad to be laid upon that portion of Water Street described in the answer."

From this determination of the issue the plaintiff appealed.   Reversed.   Rehearing Denied.

For appellant there was a brief with oral arguments by *Mr. A. S. Dresser* and *Mr. H. A. Webster*.

For respondent there was a brief over the names of *Mr. O. D. Eby* and *Messrs. Clark, Skulason & Clark,* with oral arguments by *Mr. Eby* and *Mr. A. E. Clark.*

Mr. Justice Burnett delivered the opinion of the court.

It appears from the record and is a matter of general history of the state that Dr. John McLoughlin, a British subject, settled upon what is known as the Oregon City claim prior to the passage of the act of September 27, 1850, commonly known as the "Donation Law." While he occupied that claim, which includes all the premises involved herein, he platted a portion of it into lots, blocks, alleys and streets. On account of his nationality he was not qualified to take under the donation law. Congress, however, confirmed to his purchasers the titles which he undertook to convey, and patents were accordingly issued by the general government describing each grant by the plat.

1. It appears that the high-water line of the Willamette River is upon the western part of the platted premises here in question, and that Water Street is entirely upon the space between high and low water mark. After the admission of the state into the Union by the legislation of 1874 and 1876, described by Mr. Justice Bean in *Pacific Elevator Co. v. Portland,* 65 Or. 349 (133 Pac. 72, 46 L. R. A. (N. S.) 363), the state granted to upland owners along the Willamette River all the property of the state in land lying between ordinary high and low water lines on the Willamette River. This grant, of course, was subject to the previous action of the general government in recognizing Dr. McLoughlin's plat. It seems plain that the congressional action on this subject and the conduct of the government authorities in pursuance thereof amounted

to an adoption of the McLoughlin plat, with the consequent dedication to the public of the streets delineated thereon. The plaintiff has become the owner in fee of the block and land mentioned by mesne conveyances from the grantees of the government. By virtue of the grant from the state he became the owner of the space included between high and low water mark in front of the municipal subdivision mentioned, subject, indeed, to the use thereof as a street, as portrayed upon the McLoughlin map.

2. The principal objection pressed upon us at the argument against plaintiff's claim is that he must utterly fail in his contention because in his complaint he asserts himself to be the absolute owner in fee of all the property, not only that included within the block lines, but also that to the west of the same to low-water mark of the river; while in his reply he practically concedes that a street exists between the plat lines and low-water mark of the river. The position of the defendant is that the plaintiff must recover on the strength of his complaint, in which pleading alone must his cause of action be stated, and that the reply is a shifting of his ground, or, in other words, a departure. We do not so consider the pleadings. The plaintiff describes a situation upon which the court may draw the conclusion as to his rights. While he may have failed to prove the allegations of his complaint to the utmost limit, yet he has established a substantial portion of them calling for relief according to the prayer of the bill. It is analogous to a case where a plaintiff might sue upon a claim of $1,000 for services rendered and would be able to prove only $500 worth. The relief claimed here is the same in both instances, notwithstanding the defendant's assertion that one cause

of suit is stated in the complaint and another in the reply. The defendant does not appear to have been misled in any manner by the pleadings of the plaintiff.

3, 4. The latter occupies the attitude of a land owner complaining of a threatened trespass upon his rights appurtenant to his holding. His title to the shore of the river between high and low water mark by virtue of the state legislation mentioned has been repeatedly recognized as valid in such cases as *Pacific Elevator Co.* v. *Portland,* 65 Or. 349 (133 Pac. 72, 46 L. R. A. (N. S.) 363), and the authorities cited in that exhaustive opinion. Considering the matter thoroughly, we conclude that the property on which the defendant intends to construct its trestle is a street. The public has an easement there for the right of passage as in all other streets. The fee of the land is in the plaintiff. Different from other members of the public, he has a right to use that street to gain access to his other property mentioned. It is at least an appurtenance mentioned in his complaint. It is a valuable right of which he cannot be deprived by the power of eminent domain until his damages are first constitutionally determined: Article I, Section 18, Article XI, Section 4, of the Constitution; *McQuaid* v. *Portland & Vancouver Ry. Co.,* 18 Or. 237 (22 Pac. 899, 40 Am. & Eng. Ry. Cas. 308). Injunction will lie to prevent the erection of a permanent structure in a street materially impeding its use as a street: *Bernard* v. *Willamette Box & Lumber Co.,* 64 Or. 223 (129 Pac. 1039); *Willamette Iron Works* v. *Oregon R. & N. Co.,* 26 Or. 224 (37 Pac. 1016, 46 Am. St. Rep. 620, 29 L. R. A. 88). The authority granted by the ordinance of the common council of Oregon City protects the company from the consequences of violating public rights in the street, but it cannot and does not affect private rights con-

nected therewith: *Sandstrom* v. *Oregon W. R. & N. Co.*, 75 Or. 159 (146 Pac. 803). It cannot be admitted that any institution possessing the right of eminent domain can invade private rights and property without first regularly proceeding to assess the damages and either paying or securing the same under the provisions of our state Constitution. It is urged that the plaintiff does not make any present use of the street worth naming. It may be true that his rights there and the enjoyment of the same are small, but they belong to him and are his as much as the most important piece of property. He is as much entitled to the protection of his small rights as the plaintiffs in *Willamette Iron Works* v. *Oregon R. & N. Co.*, 26 Or. 224 (37 Pac. 1016, 46 Am. St. Rep. 620, 29 L. R. A. 88), and *Pacific Elevator Co.* v. *Portland,* 65 Or. 349 (133 Pac. 72, 46 L. R. A. (N. S.) 363). It may be that a jury would give the plaintiff small damages if he were made a defendant at the suit of the defendant here in an action to condemn the right of way on the street in front of his premises. With that, however, we have no concern. It is plain that the defendant is about to interfere seriously with the plaintiff's enjoyment of the land over which it intends to construct its railway, although the same may be a street in which he holds the ultimate fee subject to the public easement therein.

.The decree of the Circuit Court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.   Rehearing Denied.

Mr. Chief Justice Moore, Mr. Justice McBride and Mr. Justice Benson concur.