Argued February 8, reversed February · 29, rehearing denied April
25, 1916.

# KURTZ *v.* SOUTHERN PACIFIC CO.

### (155 Pac. 367; 156 Pac. 794.)

**Eminent Domain—Use of Highways—Compensation of Abutting
   Owner—"Taking."**

1.   Section 3279, L. O. L., provides that when the County Court
vacates a street, the land so dedicated to public use attaches to
the lots bordering thereon, all right thereto vesting in the abutting
owners.   Article I, Section 18, of the Constitution provides that pri-
vate property shall not be taken for public use without just com-
pensation, nor except in case of the state without such compensation
first assessed and tendered.   Article XI, Section 4, provides that no
person's property shall be taken by any corporation under authority
of law without compensation being first paid or secured.   The city
council authorized the building of a spur track along a street in
front of plaintiff's land at a distance of not less than 10 feet from
his line, retaining power to regulate the use of the track.   A rail-
road started building a track, a curve of which approached within
42 inches of plaintiff's line, without making compensation.   *Held* that
the construction of the spur was a taking of private property pro-
hibited by the Constitution, so as to require payment before con-
struction, and not assessment only of damages thereafter.

   [As to right of abutting owner to enjoin railroad from laying
   tracks in street without making compensation, see note in **Ann.
   Cas. 1913E, 874.**]

**Licenses—Use of Streets—Nature of Purpose.**

2.   While the right of a person to · drive a team or vehicle on a
traveled street or haul by ordinary means his own goods thereon is
common to all citizens, when he engages in the transportation of
passengers or freight for hire, he is pursuing a special business, and
the municipality may require the payment of a license fee for such
use.

**Municipal Corporations—Use of Streets—Nature of Purpose.**

3.   A city may, by ordinance, grant to a person the right to trans-
act any business on the streets which, without such permission, might
be regarded as a nuisance.

**Licenses—Use of Streets—Effect.**

4.   The immunity conferred by municipal license to use the streets
for transporting persons or goods for hire does not relieve the licensee
from liability to an individual who sustains some special injury
separate and distinct from that suffered by the public at large on
account of such license.

**Eminent Domain—Use of Streets—Special Purposes—Damage to
   Property—Evidence.**

5.   The excavation for constructing a spur track in a street abut-
ting plaintiff's property interfering with his ingress and egress and

lessening the rental value of his property is a special injury on account of which equity will intervene and protect his rights.

**Eminent Domain—Nuisance—Private Nuisance—Locality—Effect.**

6.    That plaintiff's apartment house and dwelling were in a district devoted to commercial enterprises in which the use of spur switches was essential to successful operation does not affect his right to enjoin the nuisance of constructing railway tracks in the street passing his property or demand damages for such construction, but he could make such use of his own buildings as suited his convenience, unless he interfered with the public right.

**Eminent Domain—Damages—Evidence.**

7.    To recover loss of rentals from abutting property caused by the construction of a spur switch, plaintiff, in an action for injunction, and damages, must show whether general business depression or the construction work decreased the rental value.

From Marion: WILLIAM GALLOWAY, Judge.

Department 2.    Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by G. Frederic Kurtz to enjoin the Southern Pacific Company, a corporation, and the Oregon & California Railroad Company, a corporation, from building a railway switch in a public street.    The facts are that the defendant, the Oregon & California Railroad Company, a corporation, owns a steam railway system, the main line of which is laid north and south on Twelfth Street in Salem, Oregon.    From this line at that place a short branch, used for transportation of freight, extends west along the middle of Trade Street.    These lines have been leased to the defendant, the Southern Pacific Company, a corporation, which is engaged in operating trains thereon.    The plaintiff, G. Frederic Kurtz, owns a rectangular tract of land, commencing at the southeast corner of lot 4 in block 8 in that city, and extending from that corner west 82.5 feet along the north side of Trade Street, and north 74.5 along the west side of Church Street.    At the southeast corner of this real property has been erected a two-story flat, the apartments of which are leased to

families.  At the southwest corner stands a 1½-story
dwelling, which has also been leased.  About 3 feet west
of the latter building is the Cherry City Mill, where
flour is manufactured.  Much of the wheat used for
that purpose is procured from the farmers, who effect
at the mill a sale for the grain which they haul with
teams to market.  Quite a quantity of wheat, however,
is obtained from Eastern Oregon and is shipped to the
mill by rail.  A great deal of the flour so manufactured
is shipped by rail to various points.  In receiving
wheat or in shipping flour in this manner about 50
freight-cars a year are used, each one being left on
the track in the middle of Trade Street, and the load is
either hauled to the mill or from it to the cars by teams,
entailing an expense of 50 cents a ton for drayage.  In
order to avoid such outlay and to prevent interference
with the operation of trains on the branch line, the
owner of the mill tried to secure from the plaintiff the
right to put in a spur switch, but the privilege could
not be obtained.  Thereupon the owner of the mill ap-
plied for relief to the council of Salem, and on June 27,
1912, an ordinance was enacted authorizing the Oregon
& California Railroad Company to build the switch,
so that the inside rail should not be nearer than 10
feet from the south line of block 8, and to operate the
siding for a term of 25 years.  The permission was
granted, however, upon the condition that the company
would make necessary fills and excavations, so as to
bring the railway line to the established grade at that
place, and also to put down street pavement beside
and between the tracks to correspond with the improve-
ment required by ordinance.  The city reserved to
itself the right to prescribe the manner of using the
spur switch, to designate the time empty cars should
remain thereon, and to impose a penalty for a violation

of either of these regulations.   Pursuant to that ordinance the defendants made an excavation on the north side of Trade Street in front of the plaintiff's land, so that when there were laid in such trench ties and rails, the top of the track would be at grade.   From points of intersection with the branch line in the middle of that street east of Church Street rails were laid to the southeast corner of plaintiff's premises, the north rail being about 42 inches south of the sidewalk. When the placing of the rails had reached such point, this suit was instituted.   Issues having been thereafter joined, the cause was tried and the suit dismissed, from which decree the plaintiff appeals.

Reversed.

For appellant there was a brief over the names of *Mr. Charles L. McNary, Mr. John H. McNary* and *Mr. Everil M. Page,* with an oral argument by *Mr. Charles L. McNary.*

For respondent there was a brief over the names of *Mr. Ralph E. Moody* and *Mr. George G. Bingham,* with an oral argument by *Mr. Moody.*

Opinion by Mr. Chief Justice Moore.

1. The statute of this state provides generally that when, upon proper application and due notice, the County Court of any county vacates a street, the land so dedicated to the public shall be attached to the lots or ground bordering on such street, and all right or title thereto shall vest in the person or persons owning the property on each side thereof, in equal proportions: Section 3279, L. O. L.   In construing this enactment it has been held that notwithstanding the dedication of a city street, the title in fee to the highway remains

in the dedicator until it passes by a conveyance of a lot, when the grantee takes and holds the title to the middle of the street upon which the land abuts, subject, however, to the public easement therein: *McQuaid* v. *Portland etc. Ry. Co.,* 18 Or. 237 (22 Pac. 899); *Lankin* v. *Terwilliger,* 22 Or. 97 (29 Pac. 268); *Huddleston* v. *Eugene,* 34 Or. 343 (55 Pac. 868, 43 L. R. A. 444).   In *John P. Sharkey Co.* v. *City of Portland,* 58 Or. 362 (106 Pac. 1331, 114 Pac. 933), Mr. Justice McBRIDE, discussing this subject, says:

"It is settled past controversy in this state that the abutting owner is also the owner of the soil of the street in front of his lot to the center of the street, subject to the right of the city to improve the same for the purpose of travel."

The organic law, regulating the condemnation of land, provides:

"Private property shall not be taken for public use * * without just compensation; nor except in case of the state, without such compensation first assessed and tendered": Article I, Section 18, of the Constitution of Oregon.

"No person's property shall be taken by any corporation, under authority of law, without compensation being first made or secured in such manner as may be prescribed by law": Id., Article XI, Section 4.

In *McCammon etc. L. Co.* v. *Trinity etc. R. Co.,* 104 Tex. 8 (133 S. W. 247, Ann. Cas. 1913E, 870, 36 L. R. A. (N. S.) 662, the Supreme Court of Texas, in construing clauses of the Constitution of that state, which provided that without consent of the owner his property shall not be "taken, damaged, or destroyed" without compensation, and that when his property is taken, "compensation shall be first made or secured by a deposit of money," it was ruled that the occupation of a

street by a railroad was a "taking" of the property of a person owning the fee of the street, and that such occupation was not a mere "damaging," for which compensation might be made subsequently. In a note to that case it is said:

"It is generally held that an abutting owner who owns the fee to the center of the street may enjoin a railroad company from laying its tracks in the street without first paying or securing compensation for the injury to his property. But where the fee in the street is in the municipality and not in the abutting owner, the latter cannot enjoin the use and occupation of the street by the railroad company, but is remitted to his action at law to recover any damages that he may sustain by reason of such occupation and use of the street."

To the same effect see the exhaustive note to the case of *Rasch* v. *Nassau Electric R. Co.*, 198 N. Y. 385 (91 N. E. 785, 36 L. R. A. (N. S.) 645, 823). The plaintiff being the owner in fee, subject to the public easement, of that part of Trade Street north of the middle line thereof in front of and abutting upon his real estate, the excavation in the highway near the sidewalk on the south side of the premises, for the purpose of building the spur switch, evidences a "taking" of his property without just compensation within the meaning of Article XI, Section 4, of the Constitution of Oregon.

2, 3. The right of a person to drive a team hitched to a carriage, or to control a vehicle upon a traveled street, or to haul by ordinary means his own goods thereon without let or hindrance, is common to all citizens who have occasion to use the highway for pleasure, profit or advantage. When, however, a person engages in the transportation of passengers or freight, or both, for hire, he is pursuing a special business, and in order legally to exercise that privilege the munici-

pality may require of him the payment of a license fee. So, too, a city might by ordinance grant to a person, firm or corporation the right to transact any business which, without such permission, might be regarded in the nature of a nuisance.

4. Though a grant of such authority usually precludes any prosecution for a violation of the public right that is not *malum in se,* the immunity thus conferred does not relieve the grantee of the franchise from liability to an individual who, by a pursuit of the privilege, sustains some special injury separate and distinct from that suffered by the public at large: *Sandstrom* v. *Oregon-Washington R. & N. Co.,* 75 Or. 159 (146 Pac. 803).

5. That the excavation in the street in front of and abutting upon the plaintiff's real property, thereby interfering with ingress and egress on the south side, was a special injury to his estate in the land is unquestioned, and in such case a court of equity will intervene to protect the right of the injured party until it has been voluntarily relinquished or secured by judgment of condemnation: *McQuaid.* v. *Portland etc. Ry. Co.,* 18 Or. 237 (22 Pac. 899); *Willamette Iron Works* v. *Oregon R. & N. Co.,* 26 Or. 224 (37 Pac. 1016, 46 Am. St. Rep. 620, 29 L. R. A. 88); *Baines* v. *Marshfield etc. R. Co.,* 62 Or. 510 (124 Pac. 672); *Bernard* v. *Willamette B. & L. Co.,* 64 Or. 223 (129 Pac. 1039).

6. The fact that plaintiff's apartment house and dwelling are in a district devoted to great commercial enterprises in which the use of spur switches is absolutely essential to the successful operation of the business there conducted, cannot alter the legal principle involved. He is entitled to make such use of his own buildings as suits his convenience or gratifies his fancy, and, so long as he does not trench upon the public right,

he must be protected in the enjoyment of his prerogative.

7. This suit not only seeks injunctive relief, but endeavors to obtain a recovery of the ·damages which are alleged to have been sustained by reason of the injury. The chief element of the detriment complained of is the alleged loss of rents which it is asserted might have been secured from a lease of the buildings, except for the proposed construction and maintenance of the spur switch. The evidence shows there has been quite a diminution of revenue from that source, but whether or not the loss of such money results wholly from the contemplated alteration of the street, or is due in part to the business depression which has obtained on the Pacific Coast, is problematical. In view of this doubtful condition, it is believed the cause of justice will be promoted by making an injunction against any further alteration of the street in front of the plaintiff's premises temporary, and requiring the excavation to be filled until his right has been secured by compromise, or, if this cannot be obtained, then by condemnation when the amount of damages which he has suffered can be determined by a jury.

In accordance with this view, the decree should be reversed and one entered here as indicated, and it is so ordered.                                 REVERSED.

MR. JUSTICE BEAN, MR. JUSTICE HARRIS and MR. JUSTICE BENSON, concur.

Denied April 25, 1916.

On Petition for Rehearing.

(156 Pac. 794.)

Department 2.   Mr. Justice Benson delivered the opinion of the court.

Defendant contends very strenuously that the opinion heretofore rendered in this case is inconsistent with the former opinions of this court in the cases of *McQuaid* v. *Portland & V. Ry. Co.,* 18 Or. 237 (22 Pac. 899); *Portland & W. V. R. Co.* v. *City of Portland,* 14 Or. 188 (12 Pac. 265, 58 Am. Rep. 299); and *Willamette Iron Works* v. *Oregon R. & N. Co.,* 26 Or. 224 (37 Pac. 1016, 46 Am. St. Rep. 620, 29 L. R. A. 88). However, a careful analysis of the decisions in these cases does not sustain counsel's position.   In *McQuaid* v. *Portland & V. Ry. Co.,* 18 Or. 237 (22 Pac. 899), Mr. Chief Justice Thayer, after an extended discussion in which he uses the language quoted by defendant, concludes the whole matter in these words:

"But I maintain, further, that the rights of such adjoining land owners in a part of the adjacent highway sufficient for the reasonable enjoyment of their premises constitute in them a property interest, whether they own the fee to the center of the highway, or merely an easement therein; that in either case it is a proprietary right, which they purchased with the premises, as appurtenant thereto, and which they cannot be deprived of, except by the same power, and upon the same terms, by which they may be deprived of any other property; and that the grounds of liability of a railway corporation for an encroachment upon those rights, under an attempted appropriation of the highway, is not carelessness or negligence in the location of its road, but a wrongful usurpation,

which no legislative power can sanction, under the Constitution of the state, without providing for just compensation.''

The next case relied upon by counsel (*Portland & W. V. Ry. Co.* v. *City of Portland*), after the generalization quoted in the petition, follows it with this language:

''The decisions, however, are not entirely harmonious, where the public have only an easement in the street or highway; and in some of the cases it has been held, as against the proprietor of the soil, the use of the street or highway for the purposes of a railroad created an additional burden or servitude, which, under the Constitution, he could not be deprived of without compensation: *Ford* v. *Chicago & N. W. R. Co.*, 14 Wis. 609 [8 Am. Dec. 791]; *Pomeroy* v. *Milwaukee & C. R. Co.*, 16 Wis. 640; *Gray* v. *St. Paul & P. R. Co.*, 13 Minn. 315 (Gil. 289); *Williams* v. *Natural Bridge P. R. Co.*, 21 Mo. 580. And this, Judge Cooley says, appears to be the weight of authority: Cooley Const. Lim., 549. But where the fee of the streets is in the city corporation, and not in the adjoining owner, a different rule has been applied. (Citing a number of cases.) It may be—it is not necessary for us to decide the question—that private citizens owning adjoining property may have rights or estate in or to the use of streets or public places over which the power of the legislature is not supreme or plenary. Whatever their rights may be, we are not required to consider upon this record.''

The third case referred to by counsel is that of *Willamette Iron Works* v. *Oregon R. & N. Co.*, 26 Or. 224 (37 Pac. 1016, 46 Am. St. Rep. 620, 29 L. R. A. 88), and from this opinion the petition quotes a generalization; but following the matter quoted by defendant in his argument we find this language:

"But there is a limitation to legislative or municipal power over a street, which cannot be exceeded without invading the constitutional rights of abutting owners. An abutting proprietor is entitled to the use of the street in front of his premises to its full width as a means of ingress and egress, and for light and air, and this right is as much property as the soil within the boundaries of his lot; and therefore any impairment thereof or interference therewith, caused by the use of the street for other than legitimate street purposes, is a taking within the meaning of the Constitution, whether the fee of the street is in the abutting owner or not."

This doctrine has been recently reiterated by this court in *Tooze* v. *Willamette V. S. Ry. Co.*, 77 Or. 157 (150 Pac. 252).

The evidence discloses that the spur track of which complaint is made is a special injury affecting no other property owner than plaintiff, that it will materially and premanently affect his ingress and egress to and from his lots, and consequently his property rights are invaded in a manner which can only be lawfully done by compromise or condemnation.

The petition for rehearing is therefore denied.

REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.